JAYE CAMMISA ET AL. *v.* BOARD OF EDUCATION OF THE CITY OF WATERBURY

LINDA DeTOTO ET AL. *v.* BOARD OF EDUCATION OF THE CITY OF WATERBURY

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and HEALEY, Js.

Argued February 10—decision released July 25, 1978

*Martin A. Gould,* with whom was *Kevin T. Nixon,* for the appellants (plaintiffs).

*John F. Phelan,* assistant corporation counsel, with whom, on the brief, was *Mark D. Capuano,* for the appellee (defendant).

Longo, J. In two appeals taken to the Court of Common Pleas the plaintiffs in the *Cammisa* and *DeToto* cases unsuccessfully sought to revoke the decision of the defendant board of education of the city of Waterbury, hereinafter the board, not to renew their contracts of employment as nontenured teachers for the 1976–1977 school year. By stipulation of the parties the plaintiffs' appeals to this court were consolidated because the questions presented are substantially the same.

The relevant facts as found by the two trial courts may be summarized as follows: On February 27, 1976, notices from the board and the superintendent of schools were sent to all 223 nontenured teachers in the Waterbury school system, stating that because of "severe economic pressures and budgetary restraints" the board had decided, pursuant to General Statutes § 10-151, not to renew their employment contracts for the school year 1976–1977. When asked by the teachers for a statement of reasons and a hearing, the board replied that budget cuts were expected, that it was uncertain how many teachers would be needed for the

1976–1977 school year, and that no hearing would be scheduled until the teachers indicated under what authority they claimed the right to a hearing. The named plaintiff Jaye Cammisa and the rest of the nontenured teachers appealed to the Court of Common Pleas. The court (*McGuinness, J.*) concluded that the plaintiffs' rights of employment and appeal were governed by § 10-151 of the General Statutes and not by the Waterbury charter as claimed by the plaintiffs; that their contracts were properly nonrenewed under § 10-151 (a), which provides a right to an administrative hearing but not a right of appeal to a court; that the plaintiffs had failed to exhaust their administrative remedies; and that the trial court lacked jurisdiction to hear the appeal.

Of the 223 *Cammisa* plaintiffs who received notices of nonrenewal dated February 27, 1976 (just prior to the March 1 deadline specified in § 10-151 [a]), only seventy-one were ultimately denied employment by a second notice of nonrenewal dated June 16, 1976. The named plaintiff Linda DeToto and the other teachers so notified appealed again to the Court of Common Pleas. The court (*Kline, J.*) agreed with the reasoning of the *Cammisa* decision and sustained the board's plea in abatement, except as to three plaintiffs who had acquired tenure prior to the sending of the second notice of nonrenewal.

We first consider the issue of mootness. At oral argument it was established that most of the plaintiffs who received second notices of nonrenewal were in fact rehired or reinstated for the 1976–1977 school year, but that approximately twenty plaintiffs had not been rehired. As to those plaintiffs

practical relief can follow from our decision and their appeal, therefore, may be maintained. See *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452, 352 A.2d 291. The board contends that the appeal is moot as to the two remaining groups of plaintiffs: the 152 plaintiffs in *Cammisa* who received only first notices of nonrenewal, and the approximately forty-eight *DeToto* plaintiffs who received second notices of nonrenewal but who were subsequently rehired, presumably during the summer preceding the 1976–1977 school year. The board's claim is disputed on the ground that the plaintiffs in both categories suffered injury as a result of the board's actions, such as loss of seniority and fringe benefits. Such questions of fact bearing on mootness and appropriate forms of relief are not part of the record before us and must be determined by the trial courts on remand, for we have decided that they erred in rendering judgments for the board.

Although the plaintiffs raise numerous claims of error, a single issue is dispositive of the case: whether their employment and appeal rights are governed by the Waterbury charter or by § 10-151 of the General Statutes. Section 10-151 applies by its terms to all teachers employed by boards of education but also provides, in subsection (d), that "[t]he provisions of any special act regarding the dismissal or employment of teachers shall prevail over the provisions of this section in the event of conflict."

The initial question of statutory construction is whether "dismissal" as used in § 10-151 (d) encompasses nonrenewal of a nontenured teacher's contract; we hold that it does. Elsewhere, in subsec-

tions (a) and (b), the statute speaks only of contract "renewal" and "termination" for nontenured and tenured teachers. The word "dismissal" appears but once, in subsection (d). This suggests that the legislature intended the term to have its customary broad meaning of sending or removing from office or employment, whether by terminating a teacher's contract or by declining to renew it. See Webster, Third New International Dictionary. Nothing in the language of § 10-151 indicates that the legislature was less solicitous of the rights of nontenured teachers created by special acts than of the rights of tenured teachers.[1]

Two provisions of the Waterbury charter have been brought to our attention as controlling the dismissal of teachers in Waterbury. Section 903 (b),[2] enacted as Special Act No. 244, Special Acts of 1939, states that teachers in office shall hold their office unless dismissed by the board for cause, and that a dismissed teacher shall have a right of

[1] In two cases relied on by the board, a contrary legislative intent was discerned on the basis of materially different statutory language. *Shannon* v. *Board of Education of Kingsport,* 199 Tenn. 250, 286 S.W.2d 571; *Hortonville Education Assn.* v. *Hortonville Joint School District No. 1,* 66 Wis. 2d 469, 225 N.W.2d 658.

[2] "REMOVAL FOR CAUSE; APPEALS. The superintendent, principals, assistants and teachers in office at the time of the passage of this act and those hereafter appointed, shall hold their office and membership in said department in their present grade, unless promoted, demoted or dismissed by said board of education for cause, provided, when any member of said department shall be dismissed by said board, he shall have the right of appeal from the action of said board to the court of common pleas for the judicial district of Waterbury within thirty days after notice of said action of the board. Said court shall hear any appeal and may approve, modify or revoke such action of the board and may award costs at its discretion. During the pendency of such appeal, such action of the board shall have full force and effect, subject to the power of said court, if such action shall be modified or revoked, to make its decree relate back to the date of such action. . . ."

appeal to the Court of Common Pleas. Section 904,[3] enacted as Special Act No. 499, § 270, Special Acts of 1931, empowers the superintendent of schools to appoint teachers to positions authorized by the board, and to dismiss them at his discretion. Section 904 further provides that any dismissal by the superintendent shall be final unless reversed by a majority vote of the board, and that the teacher to be dismissed is entitled to written notice from the superintendent at least one week prior to the board meeting at which the superintendent reports the dismissal.[4]

The crux of the board's argument is that even if "dismissal" as expressed in General Statutes § 10-151 (d) includes nonrenewal of a nontenured

---

[3] "SUPERINTENDENT OF SCHOOLS. The superintendent of schools shall be appointed and his salary shall not be increased or decreased except in the manner provided in this Charter. He shall appoint, from those eligible under the rules of the board, all principals, assistants and teachers necessary to fill positions authorized by the board. He shall assign all principals, assistants and teachers to their respective positions and reassign them or dismiss them from office at his discretion. He shall report in writing at each meeting of the board all appointments, reassignments and dismissals made by him since the previous meeting. Any appointment by the superintendent may be rejected by a vote of a majority of the board. Any dismissal by the superintendent shall be final unless reversed by a vote of a majority of the board at the meeting when such dismissal is reported. Notice of dismissal on the part of the superintendent shall be given to the principal, assistant or teacher by the superintendent in writing at least one week before the meeting of the board when the superintendent reports such dismissal. . . ."

[4] In its brief the board questions for the first time the constitutionality of the charter provisions, in that they do not provide a right to a due process hearing before a teacher is denied employment. See Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548; Perry v. Sindermann, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570. That issue is not properly before us; Practice Book, 1963, § 623; and we note only that nothing in the charter appears to prohibit the board from affording an opportunity for a hearing.

teacher's contract, dismissal for "cause" as that term is used in § 903 of the charter connotes fault on the part of the teacher, such as incompetence or misconduct, and was not intended to cover elimination of the teacher's position for budgetary reasons. The board claims to find support for this construction of § 903 in the wording of § 904, which authorizes the superintendent to appoint teachers only to authorized positions. Therefore, the board suggests, the superintendent's power to dismiss teachers must be similarly limited to dismissals from authorized positions. When an authorized position is eliminated, the charter does not apply and the board has the power to dismiss the teacher occupying it in accordance with § 10-151 of the General Statutes.

We disagree. Sections 903 and 904 of the charter are interrelated and must be read together. Their manifest intent is that all Waterbury teachers remain employed subject only to being dismissed for cause upon prior notice, with a right of appeal. "Cause" cannot be given the narrow meaning urged by the board, for such an interpretation would lead to anomalous results. In enacting § 903 and § 904 the legislature could not reasonably have intended that a Waterbury teacher whose contract is not renewed because of his incompetence or misconduct is entitled to one week's notice and an appeal to the Court of Common Pleas, but that a Waterbury teacher whose contract is not renewed solely because his job has been eliminated is not so entitled. The logical conclusion is that "cause" in § 903 includes elimination of an authorized position. While the strained construction proposed by the board harmonizes to a certain extent the nonrenewal provisions of General Statutes § 10-151 (a) with the dismissal provisions of the charter, such an intention

to reconcile the two laws cannot fairly be ascribed to the legislature. Section 903 of the charter was enacted in 1939, two years before nonrenewal provisions were added to the predecessor of General Statutes § 10-151 by § 142f of the 1941 Cumulative Supplement to the General Statutes. Thus the legislature could not have intended the charter to mesh with a nonexistent nonrenewal provision.

We construe the legislative intent of subsection (d) of § 10-151, which states that the provisions of any special act regarding the dismissal or employment of teachers shall prevail over the provisions of § 10-151 *in the event of conflict,* to be a mandate prohibiting interference with the employment rights of those teachers who, at the time of their employment, were governed and protected by special acts such as the Waterbury charter. A contrary interpretation would impose upon the Waterbury teachers a status of probationary employment not contemplated at the time of their employment and not provided for in the Waterbury charter.

We conclude that as claimed by the plaintiffs there is a conflict between their employment and appeal rights under the Waterbury charter and under General Statutes § 10-151. In such a case, § 10-151 (d) commands that the charter must prevail. It follows that the plaintiffs are entitled to an appeal to the Court of Common Pleas in accordance with the pertinent provisions of the Waterbury charter.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.