LOCAL #1186, AFSCME ET AL. v. BOARD OF EDUCATION OF THE CITY OF NEW BRITAIN ET AL.

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

---

Argued June 3—decision released August 12, 1980

*Harold J. Geragosian,* for the appellant (named plaintiff).

*Richard Biggar,* assistant corporation counsel, with whom, on the brief, was *William W. Weber,* corporation counsel, for the appellant (plaintiff city of New Britain).

*Russell L. Post, Jr.,* with whom, on the brief, was *Jewel A. Gutman,* for the appellees (defendants).

PETERS, J. This case arises out of the decision of a local board of education to hire and to test its nonprofessional employees without regard to a city civil service system or a city-wide union contract purporting to cover these employees. The

plaintiffs, Local #1186, American Federation of State, County and Municipal Employees, Council 4, AFL-CIO (hereinafter the union) and the city of New Britain (hereinafter the city) brought a suit for declaratory and injunctive relief against the defendants, the New Britain board of education (hereinafter the board), its individual members and its superintendent of schools, alleging that the board was violating state statutes, the New Britain charter, and a binding collective bargaining agreement. After a trial to the court, *Graham, J.,* judgment was rendered for the defendants on the ground that the board was authorized by the New Britain charter to exercise plenary power over its nonprofessional employees, except as to their removal from employment which was subject to the merit system as administered by the city's personnel director and civil service commission, and that the board was not bound by the labor agreement between the city and the union. The union and the city have appealed from this declaratory judgment.

The trial court's findings of fact, which are not contested on this appeal,[1] establish the following: New Britain has a city charter which was enacted in 1961, pursuant to the Home Rule Act.[2] The charter entrusts responsibility for the educational

[1] Although the plaintiffs in their assignment of errors attacked a number of the findings of the trial court, these assignments have not been briefed and are deemed abandoned. *Gould* v. *Rosenfeld,* 178 Conn. 503, 505, 423 A.2d 146 (1979); *Jones* v. *Civil Service Commission,* 175 Conn. 504, 505, 400 A.2d 721 (1978).

[2] The city charter was enacted by the General Assembly in 1961; 30 Spec. Acts 404, No. 420; pursuant to article tenth of the Connecticut constitution, General Statutes § 2-14, and the Home Rule Act; General Statutes §§ 7-187 through 7-201. *Grogan* v. *New Britain,* 175 Conn. 174, 179, 397 A.2d 97 (1978); *First Church of Christ, Scientist* v. *Friendly Ice Cream,* 161 Conn. 223, 225, 286 A.2d 320 (1971).

system to the defendants, the board, its members and its superintendent of schools, and responsibility for the merit system to the civil service commission and its personnel director. The merit system covers generally the personnel in the classified service of the city. Although the merit system excludes unclassified service from its coverage, the board's employees who are the subject of the present dispute, the school custodians and educational secretaries, do not fall within the charter's definition of the unclassified service.

The board of education is given, by § 912 of the New Britain charter, the power to "make, change, amend or alter any rules and regulations as to the duties, terms of office, mode of election, and compensation of all persons employed by said Board," and thus has the power to determine the wages and the conditions of employment of all of its employees. It is the board that pays, out of its budget, the salaries, the insurance and the fringe benefits of its custodians and its educational secretaries; it is the board that assigns their work, sees to their training, supervises them, disciplines them, and evaluates them. All nonprofessional persons within the New Britain school system are employees of the board, and as such are employees of the city.

The merit system has never covered all classified city employees, even apart from the present controversy about school custodians and educational secretaries. Other classified employees that have historically been excluded are: the paraprofessionals within the school system, the employees of the redevelopment agency and the employees of the housing authority.

From 1947, when the civil service system was adopted, until February 14, 1977, the hiring of non-professional employees of the board such as custodians and educational secretaries (but not of its paraprofessionals) was processed through the civil service commission, which conducted examinations and rated applicants. There is, however, a history of escalating conflict between the board and the civil service commission, arising out of the commission's repeated delay and occasional denial of the board's requests to fill vacant positions.

The plaintiff union became the certified exclusive collective bargaining agent for all classified city employees in 1965, and continues to represent all such employees except those of the housing authority, the redevelopment agency and the paraprofessionals in the school system. The custodians and the educational secretaries employed by the board have been part of the bargaining unit and have their dues regularly checked off and paid; none of these employees has requested otherwise. Collective bargaining contracts have been negotiated between the union and the city, without the participation of the board, which has not been a party to the contracts. These contracts, which cover school custodians and educational secretaries, affect the operation of the schools by setting the total hours of work and vacation schedules (some while schools are in session), and by setting wage increases and fringe benefits subsequent to approval of the board's budget. Furthermore, the union contract has been interpreted to require the board to hire laid-off employees of other city departments without testing and with transferred seniority rights.

As a result of prior conflicts with the civil service commission and disagreement with its interpretation of the union contract, the board officially and formally determined, on February 14, 1977, that it would assume sole responsibility for the employment of its nonprofessional staff. In order to retain control over the disciplinary procedures, transfer rights, seniority systems, and work assignments for the school employees, the board would henceforth hire from its own lists and use its own tests. It would no longer select its custodians and its educational secretaries from lists furnished by the civil service commission. This decision precipitated the present controversy.

Before we reach the merits of the suit for declaratory judgment, it is important to clarify what is not at stake. The defendant board has never asserted, nor does the law suit claim to the contrary, the right to make appointments at will or to disregard the right of board employees to bargain collectively. The issue is not whether board employees will be hired on the basis of merit or whether they will continue to be represented by a union or this union. The board asserts only that it, and not the city, is the proper agency to administer appropriate testing and to negotiate an appropriate collective bargaining agreement.

The declaratory judgment action sought a determination of three issues. These issues, and the trial court's resolution thereof, are as follows. Question 1 (a) asked "whether the Board of Education, acting under the provisions of Connecticut General Statutes, Section 10-218 et seq. may hire [and] conduct tests to employ classified nonprofessional employees such as, custodian and edu-

cational secretaries and others." This question was answered "yes." Question 1 (b) asked "whether the Personnel Director of the City of New Britain, acting under the provisions of the City Charter, Chapter 3, Articles 1 – 15 inclusive, of the City of New Britain, and the provisions of the Merit System Provisions of the Charter, Rules of the Civil Service Commission, may enforce provisions relating to the appointment, duties, promotion, pay and removal of non-professional, classified employees of said Board of Education." This question was answered "[n]o, but with the qualification that the Personnel Director may enforce the provisions of the merit system and the rules of the Civil Service Commission as they relate to the *removal* of non-professional classified employees of the Board." The final question, question 1 (c), asked "whether the Defendant, Board of Education, is subject to the provisions of the Labor Agreement between the City of New Britain and the Plaintiff [Union] herein specifically, Subsection 4.3 and 4.5." This question was answered "no." The plaintiff's appeal contests the trial court's resolution of each of these questions, as well as the court's resolution of other subordinate questions of law.

## I

In our review of these questions on this appeal, we will deal jointly with the first two questions, since they address opposite sides of the same coin. The ultimate authority to hire and test nonprofessional classified employees of the board must rest either with the board or with the civil service commission. The board has taken no cross appeal, and

there is therefore no present disagreement that the power to regulate removal of nonprofessional employees is vested in the civil service commission.[3]

The authority vested in local boards of education is derived from a multitude of sources. On the one hand, local boards act as agencies of the state to carry out the constitutional guarantee of free public education contained in article eighth, § 1[4] and implemented by General Statutes § 10-220. Pursuant to § 10-220, local boards are specifically charged with the duty to "maintain good public elementary and secondary schools" and to see to "the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes." [5] See *Maitland* v. *Thompson,* 129 Conn. 186, 191, 27 A.2d 160 (1942). Furthermore, although it is the municipalities that appropriate the funds for the maintenance of public schools, General Statutes § 10-220 provides that it is the local boards that decide, in their discretion, how those funds shall be budgeted and expended. *Board of Education* v. *Ellington,* 151 Conn. 1, 6, 193 A.2d 466 (1963); cf. *Fowler* v. *Enfield,* 138 Conn. 521, 530, 86 A.2d 662 (1952). On the other hand, local boards are also

---

[3] It is neither illogical nor unusual to impose greater formal restraints on the determination that an employee is to be discharged than on the determination that the employee is to be hired. Compare, under the Teacher Tenure Act; General Statutes § 10-151; the detailed procedures governing the dismissal but not the initial employment of teachers.

[4] The constitution of Connecticut, article eighth, § 1, states: "(FREE PUBLIC SCHOOLS.) SEC. 1. There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation."

[5] General Statutes § 10-220 also confers upon each local school board the general power to "perform all acts required of it by the town or necessary to carry into effect the powers and duties imposed by law."

governed by local charters specially enacted by the General Assembly pursuant to article tenth of the constitution of Connecticut and the Home Rule Act; General Statutes §§ 7-187—7-201. The state's grant of broad powers to local boards of education is not unlimited; see *Herzig* v. *Board of Education,* 152 Conn. 144, 150, 204 A.2d 827 (1964) ; and local charters are one of the sources of limitation. Local charters may be binding upon local boards either because a relevant state statute expressly defers to local charter provisions, as in § 10-151 (d) ;[6] see *Cammisa* v. *Board of Education,* 175 Conn. 445, 448, 399 A.2d 521 (1978); or because the local charter provisions are not inconsistent with or inimical to the efficient and proper operation of the educational system otherwise entrusted by state law to the local boards. See *Wallingford* v. *Board of Education,* 152 Conn. 568, 574-75, 210 A.2d 446 (1965).

Nothing in the state statutes speaks directly to the duty of local boards of education to observe the rules and regulations of local civil service commissions. We must turn, therefore, to the New Britain charter to determine the extent to which that charter confers powers and sets limitations upon the New Britain board of education. We are mindful that in *Wallingford* v. *Board of Education,* supra, we held that a local charter may prescribe civil service regulations for the hiring of nonprofessional classified employees of a board of education. Contrary to the argument of the plaintiffs, however, *Wallingford* is not dispositive of this case, since its

---

[6] General Statutes § 10-151 (d) states, in part, that "[t]he provisions of any special act regarding the dismissal or employment of teachers shall prevail over the provisions of this section in the event of conflict."

holding necessarily turns on the language of the Wallingford charter which differs significantly from the language of the New Britain charter.[7]

The relevant provisions of the New Britain charter are found in chapter 3, entitled "Civil Service," and chapter 9, entitled "Education." Chapter 3, in §§ 371 and 372, establishes a merit system for the appointment or promotion of employees in the city's classified service. Section 352 defines as employees in the classified service all those not exempted as unclassified by § 351; school custodians and educational secretaries do not come within the categories of those listed as unclassified employees. Section 911 of chapter 9 confers upon the board of education "all the rights, duties and powers concerning schools and educational matters vested in town boards of education and selectmen of towns by the law of this state." Section 912 authorizes the board to "make, change, amend, or alter any rules, regulations, or bylaws which they may deem necessary relative to . . . the duties, terms of office, mode of election, and compensation of all persons employed by said board and its officers . . . provided nothing in this section shall be construed as authorizing the board to remove employees who are in the classified

---

[7] The Wallingford charter, in chapter 10, § 1, provided simply: "DEPARTMENT OF EDUCATION. The board of education shall be responsible for the conduct of the educational system of the town in accordance with the provisions of this charter." Subsequent chapters established a merit selection system for the town's classified employees. The provisions of the New Britain charter are obviously more elaborate.

In *Wallingford*, furthermore, the board of education had stipulated that the town's classified service included school custodians, secretaries and cafeteria employees. *Wallingford* v. *Board of Education*, 152 Conn. 568, 572, 210 A.2d 446 (1965).

service." [8]   The trial court construed these charter provisions as exempting nonprofessional classified board employees from merit system requirements, except when removal from service is at issue. We agree.

The New Britain charter provisions give sweeping authority to the civil service commission in chapter 3, but that authority is in turn limited by chapter 9. It is difficult to imagine a more plenary grant of power to a school board than that conferred upon the New Britain board of education by § 911. The board's right to make regulations for *all* of its employees, classified and unclassified, is underscored by § 912's explicit reference, in its proviso, to removal of classified employees. Such a proviso would hardly be appropriate unless the language "all persons employed by said board," earlier in § 912, encompasses classified employees. Read as a whole; see *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 7–8, 434 A.2d 293 (1980) ; *Bahre* v. *Hogbloom,* 162 Conn. 549, 554, 295 A.2d 547 (1972) ; the charter allows the board, and not the civil service commission, to hire and to test school custodians and educational secretaries.

---

[8] Section 912, entitled "Rules and regulations; salaries; removal of officers," provides in full:

"Said board may make, change, amend, or alter any rules, regulations, or bylaws which they may deem necessary relative to the manner of conducting the meetings and business of the board, to the conduct and government of schools, and to the duties, terms of office, mode of election, and compensation of all persons employed by said board and its officers; and said board may at any time remove any officer thereof or any person employed by them; provided nothing in this section shall be construed as authorizing the board to remove employees who are in the classified service, or covered by sections 913 to 920, inclusive."   30 Spec. Acts 428, No. 420.

Our interpretation of the New Britain charter is supported by our holdings in other cases involving a possible conflict between the authority of a civil service commission and the prerogative of a local board. In *Wallingford* v. *Board of Education,* supra, the local charter conferred only general responsibility "for the conduct of the educational system" upon the local board. The generality of that language was insufficient to limit the sweep of the merit system's potential coverage of all classified employees. The Wallingford charter, in contrast to that of New Britain, conferred upon the board no express authority over the manner in which nonprofessional classified employees were to be hired. Even more illuminating is *Gilbert* v. *Civil Service Commission,* 158 Conn. 578, 583, 265 A.2d 67 (1969). In *Gilbert,* we noted that, with regard to the powers of the board of police commissioners, § 1903 of the New Britain charter provided that the board should make all necessary rules and regulations for the government of the city's police department, but then went on, in the same section, to make the board's powers "subject to the rules and regulations of the civil service commission." We held (p. 583) that the civil service rules, because of this language, preempted the police department's disciplinary procedure. The drafters of the New Britain charter thus knew how to provide uncategorically for total priority for the civil service system. With regard to the board of education, they chose instead to limit civil service commission rules and regulations to cases of removal from employment.

The plaintiffs urge that our interpretation, and that of the trial court, improperly disregards the significance of the thirty years of prior relation-

ship between the board and the civil service commission. We have repeatedly acknowledged that "[t]he practical interpretation of legislative acts by governmental agencies responsible for their administration is a recognized aid to statutory construction." *State ex rel. James* v. *Rapport,* 136 Conn. 177, 182–83, 69 A.2d 645 (1949); *Jones* v. *Civil Service Commission,* 175 Conn. 504, 508, 400 A.2d 721 (1978). In the circumstances before us, the historical record cannot override the mandates of the charter. We cannot speculate as to why the board acquiesced for so many years in the processing of its employees through the screening of the city's personnel director. The trial court did find that the board had, in the recent past, encountered repeated disruptive delays in its hiring through the personnel director, so that the relationship between the civil service commission and the board had increasingly shown signs of conflict. In any case, even if the board had not previously insisted on its rights to conduct its own hiring and testing, there has been no suggestion of a binding waiver or estoppel. *Brauer* v. *Freccia,* 159 Conn. 289, 294–96, 268 A.2d 645 (1970); see *Dupuis* v. *Submarine Base Credit Union, Inc.,* 170 Conn. 344, 353, 365 A.2d 1093 (1976); *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 53, 184 A.2d 797 (1962).

We conclude that the trial court correctly answered the first and second questions, denominated questions 1 (a) and 1 (b), in the action for declaratory judgment. Under the New Britain charter, it is the province of the board and not of the personnel director to hire and test nonprofessional classified employees such as school custodians and educational secretaries. Only the removal

of such employees from service is governed by the rules and regulations of the civil service commission.

## II

We turn next to the third question raised by the action for declaratory judgment, whether the defendant board is subject to the terms of the labor agreement between the plaintiff city and the plaintiff union. The plaintiffs contend that their collective bargaining agreement, negotiated pursuant to the Municipal Employee Relations Act, (hereinafter the MERA); General Statutes §§ 7-467—7-477; is binding upon the defendants. They point to the decision of the Connecticut board of labor relations, which, in 1965, designated and certified the plaintiff union as the exclusive bargaining representative for all classified employees of the city of New Britain. That representation covered nonprofessional classified employees of the board. They rely, further, on the provisions of § 7-474 (f) to establish the supremacy of a collective bargaining agreement over conflicting provisions of a "charter, special act, ordinance, rules or regulations adopted by the municipal employer." They argue, in short, that whatever the rights the charter confers upon the board, those rights are, by virtue of the MERA, superseded by their collective bargaining agreement purporting to cover the board's nonprofessional classified employees. The board counters these contentions by noting that a school board may itself be a "municipal employer" under § 7-467 (1) and § 7-474 (d) of the General Statutes, and that only a collective bargaining agreement negotiated by and with the appropriate municipal employer, the board, determines and delimits the rights of the board. The trial court was persuaded that the

board's position was correct, that the board was not bound by the labor agreement negotiated, without the board, by the city and the union.[9]  We agree.

To determine the effect of the collective bargaining agreement between the city and the board, we must scrutinize all of the provisions of the MERA, as well as the text of the relevant opinions of the Connecticut state board of labor relations.  For the sake of convenience, we deal first with the latter, since, upon examination, it becomes clear that the decisions of the labor board turned on matters not relevant to the current dispute.  In neither of the cases in which the labor board certified the union to be the proper bargaining representative was the board of education in fact a party; in neither case was any question raised whether it should have been a party.  In Decision No. 642,[10] rendered September 7, 1965, the union's representative status was established by virtue of a stipulation that the municipal employer, the city, had no objection to the proposed description of the bargaining unit.  The labor board, while approving the terms of the stipulation, expressly noted that the composition of the appropriate unit was not to be taken as a precedent binding upon the labor board.  In Decision No. 724,[11]

[9] We note that the collective bargaining agreement between the city and the union applicable at the time of this suit was dated July 1, 1976, signed July 15, 1977, and, by its terms ran until June 30, 1978.  This law suit was initiated on April 12, 1977.

[10] This case is entitled City of New Britain (General Employees) and Local #1186 of Council 4, American Federation of State, County and Municipal Employees, AFL-CIO.  It was a consolidation of three different cases involving municipal employees of the city of New Britain.

[11] This case is entitled The Board of Education of the City of New Britain and/or the City of New Britain and New Britain Association of Education Secretaries and Council #4, Local 1186, American Federation of State, County and Municipal Employees, AFL-CIO.

rendered December 30, 1966, educational secretaries employed by the board of education sought to carve out a separate bargaining unit for themselves, alleging that their functions and affiliations set them apart from other clerical employees of the city. The board of education, though a nominal party, took no part in these proceedings, nor was the city's status as negotiator considered by the labor board. The labor board merely refused, at the time of the case, within one year of an outstanding contract negotiated with a union only recently certified, to countenance the educational secretaries' petition. There has therefore been no administrative adjudication that the city rather than the board of education is the appropriate negotiator of collective bargaining agreements.

The relevant statutory provisions that we must examine are the various subsections of General Statutes § 7-474, the section of the MERA that regulates negotiations and agreements between municipalities and employee representatives. The plaintiff union emphasizes § 7-474 (f),[12] which declares that, in case of "a conflict between any agreement reached by a municipal employer and an employee organization . . . and any charter, special act, ordinance, rules or regulations . . . or any [relevant] general statute . . . the terms of such agreement shall prevail . . . ." The board argues, cor-

---

[12] "[General Statutes] Sec. 7-474. . . . (f) Where there is a conflict between any agreement reached by a municipal employer and an employee organization and approved in accordance with the provisions of sections 7-467 to 7-477, inclusive, on matters appropriate to collective bargaining, as defined in said sections, and any charter, special act, ordinance, rules or regulations adopted by the municipal employer or its agents such as a personnel board or civil service commission, or any general statute directly regulating the hours of work of policemen or firemen, or any general statute providing for the method or manner of covering or removing employees

rectly, that the priority of § 7-474 (f) depends upon an agreement negotiated with the proper municipal employer. School boards may be municipal employers, as that term is defined for the MERA by § 7-467 (2). More significantly, § 7-474 (d)[13] declares: "If the municipal employer is a . . . school board . . . which by statute, charter, special act or ordinance has sole and exclusive control over the appointment of and the wages, hours and conditions of employment of its employees, such . . . school board . . . shall represent such municipal employer in collective bargaining and shall have the authority to enter into collective bargaining agreements with the employee organization." The principal issue then becomes whether, under the state statutes and the New Britain charter, the

from coverage under the Connecticut municipal employees' retirement system or under the policemen or firemen survivors' benefit fund, the terms of such agreement shall prevail; provided, if participation of any employees in said system or said fund is effected by such agreement, the effective date of participation in said system or said fund, notwithstanding any contrary provision in such agreement, shall be the first day of the third month following the month in which a certified copy of such agreement is received by the retirement commission, or such later date as may be specified in the agreement."

[13] "[General Statutes] Sec. 7-474. . . . (d) If the municipal employer is a district, *school board,* housing authority or other authority established by law, which by statute, charter, special act or ordinance has sole and exclusive control over the appointment of and the wages, hours and conditions of employment of its employees, such district, school board, housing authority or other authority, or its designated representatives, shall represent such municipal employer in collective bargaining and shall have the authority to enter into collective bargaining agreements with the employee organization which is the exclusive representative of such employees, and such agreements shall be binding on the parties thereto, provided, where any provisions of any such agreement require federal approval, such provisions shall be binding upon receipt of such approval, and no such agreement or any part thereof shall require approval of the legislative body of the municipality." (Emphasis added.)

defendant board can be said to have sole and exclusive control over the appointment and the conditions of employment of its nonprofessional classified employees. As did the trial court, we hold that it does.

We have previously, in part I of this opinion, described the extensive powers conferred upon the defendant board by General Statutes § 10-220 and by the New Britain charter, §§ 911 and 912. The authority thus given to the board establishes the sole and exclusive control required by § 7-474 (d) over the appointment, wages, hours and conditions of employment of its employees. It is true that, because of the proviso in § 912, the board does not have exclusive power to remove nonprofessional classified employees from its service. That limitation is, however, not relevant, since § 7-474 (d) does not require exclusive control over removal of employees. The omission in this subsection of language relating to the subject of removal cannot be dismissed as inadvertent, since § 7-474 (f) expressly includes in its ambit "removing employees" from coverage under the state retirement system.

The right of the board, under § 7-474 (d), to act as the exclusive negotiator in bargaining collectively with its employees is not impaired by subsequent subsections of § 7-474. Section 7-474 (f) determines the effect of a validly negotiated agreement, and does not purport to prescribe the conditions of valid negotiation. Section 7-474 (g) provides that "[n]othing herein" shall diminish the authority of municipal civil service commissions to conduct and grade merit examinations. That subsection does not address other sources of limitation on the powers of local civil service commissions.

Our reading of the statutes of the state and the provisions of the New Britain charter leads us to conclude that these legislative enactments form a consistent whole. They represent the policy judgment that it is preferable to have the school board, which manages the school budget, assume the responsibility for the terms and the conditions of employment of school employees. Accountability for the maintenance of good public schools is strengthened by authorizing the school board itself to implement merit selection and collective bargaining. The plaintiffs raise the spectre of financial irresponsibility on the part of the school board, of a potential for fiscal chaos that they describe as "horrendous." These fears are not realistic as long as control over the total amount of the board's budget continues to reside, as it does, in the city's legislative body.

There is no error.

In this opinion the other judges concurred.