JOHN PERRETTA ET AL. *v.* CITY OF NEW BRITAIN ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued June 4—decision released July 28, 1981

*Harold J. Geragosian,* for the appellant (plaintiff John Argazzi).

*Joel M. Ellis,* with whom, on the brief, was *William S. Zeman,* for the appellants (intervening plaintiffs Katherine Argazzi et al.).

*Edward T. Lynch, Jr.,* with whom, on the brief, was *Dennis G. Ciccarillo,* for the appellees (defendants).

PETERS, J. The issue in this case is whether the New Britain city charter gave to the civil service commission the authority to hear appeals from discharges in the nature of layoffs arising out of the city's financial crisis. The plaintiffs, nonprobationary city employees, sued the city of New

Britain and its mayor, Matthew J. Avitable, for an order of mandamus reinstating them in their positions after the commission's orders of reinstatement were ignored by the city. The trial court denied relief, and the plaintiffs have appealed.

The following facts are undisputed. The plaintiffs John Perretta, Mary Dzioba, John F. Cass III, John F. Argazzi, Fidel A. Blumes, and Daniel J. Begley, all classified, non-probationary employees of the city of New Britain, were laid off in accordance with the "Mayor's Office Layoff Plan" on June 30, 1976. Shortly after receiving their layoff notices the plaintiffs appealed to the civil service commission, which on or about July 9, 1976 ordered their reinstatement, including restoration of all monies, fringe benefits, and seniority rights lost during the hiatus. The defendants in this action, the city of New Britain and its mayor, did not respond to the commission's order, and this suit was filed. Three of the plaintiffs, Mary Dzioba, John F. Cass III, and Daniel J. Begley, withdrew from the trial court action, although the plaintiff Dzioba was later restored.

In their complaint, later amended and rendered more specific, the plaintiffs claimed that their rights under the state and federal constitutions, the New Britain city charter (§§ 302, 374 and 392), the Rules of the Civil Service Commission (§§ 6, 12 and 19), and the Jacobs Survey of Classification and Compensation Plans had been violated. The subsequent complaint of the intervening plaintiffs, Katherine Argazzi, Thomas Baldino, Michael L. Brochu, Pauline D'Addabbo, Herman Glass, and Louis Spigno, claimed a failure by the city to comply with the commission's orders and requested man-

damus. A nonsuit was subsequently entered against intervening plaintiffs Baldino, Brochu, Glass and Spigno.[1]

In its memorandum of decision, the trial court found that the city and the mayor had acted within the bounds of their authority when they ordered layoffs in response to a genuine fiscal crisis. Further, it held that the city charter did not give the commission jurisdiction over appeals from such fiscally motivated layoffs.[2] The court rendered judgment for the defendants against all plaintiffs. The remaining plaintiffs and intervening plaintiffs have joined in this appeal. The named plaintiff, John Perretta, has since withdrawn.

It is important to be clear about what is not at issue in this case. There is no claim that the discharges questioned were disciplinary in nature. They were not so characterized by the city, and the plaintiffs have not asserted that the city's fiscal problems were a subterfuge designed to conceal discharges which were disciplinary in fact, but not in name. Although the plaintiffs do challenge the city's assessment of its financial situation, they do

---

[1] These intervening plaintiffs were nonsuited for failing to comply with an order for disclosure.

[2] Although the court acknowledged that this holding was dispositive, it went on to clarify two additional issues. First, in addressing the question of seniority rights, it found the proper remedy to be a grievance under the plaintiffs' union contract. The court also construed "seniority by department" as used in the city charter to mean seniority within a job classification and held that the plaintiff John Argazzi, who alone among the plaintiffs was not covered by the collective bargaining agreement, was laid off in accord with the charter's seniority guidelines. Second, in addressing the question of the city's fiscal condition, the court held that the civil service commission exceeded its authority in finding that the city had sufficient funds to annul the layoffs and in referring to General Statutes § 7-468.

not claim bad faith on the part of the city in basing its layoffs on an asserted lack of funds. Finally, all the parties are agreed that the authority of the civil service commission must be found in the terms of the city charter. No one claims any other source of authority, either in state statutes or in a binding collective bargaining agreement under the Municipal Employee Relations Act.[3]

## I

The disagreement of the parties about the availability of civil service commission review of layoffs for non-probationary employees rests on their disparate interpretations of several sections of the New Britain city charter.[4] It is well established that a city's charter is the fountainhead of municipal powers. *State ex rel. Raslavsky v. Bonvouloir,* 167 Conn. 357, 362, 355 A.2d 275 (1974). The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. *Food, Beverage & Express Drivers Local Union v. Shelton,* 147 Conn. 401, 405, 161 A.2d 587 (1960); *Thomson v. New Haven,* 100 Conn. 604, 606, 124 A. 247 (1924); *State ex rel. Southey v. Lashar,* 71 Conn. 540, 545–46, 42 A. 636 (1899). It follows that agents of a city, including its commissions, have no source of authority beyond the charter. "[T]heir powers are measured and limited by the

---

[3] General Statutes §§ 7-467—7-477. This court has interpreted sections of the MERA in *Local #1186, AFSCME v. Board of Education,* 182 Conn. 93, 106–10, 438 A.2d 12 (1980).

[4] The city charter was enacted by the General Assembly in 1961; 30 Spec. Acts 404, No. 420; pursuant to article tenth of the Connecticut constitution, General Statutes § 2-14, and the Home Rule Act. General Statutes §§ 7-187 through 7-201. *Grogan v. New Britain,* 175 Conn. 174, 179, 397 A.2d 97 (1978); *First Church of Christ, Scientist v. Friendly Ice Cream,* 161 Conn. 223, 225, 286 A.2d 320 (1971).

express language in which authority is given or by the implication necessary to enable them to perform some duty cast upon them by express language." *Turney* v. *Bridgeport,* 55 Conn. 412, 414, 12 A. 520 (1887).

The civil service commission of New Britain is an agency of the city authorized by General Statutes § 7-407 et seq. Its organization, powers, and procedures are described by chapter 3 of the New Britain city charter. In a recent opinion this court had occasion to examine the civil service commission of New Britain. We concluded "that it was a body of special and limited jurisdiction and therefore that it had no powers except such as the laws of its creation gave it and that it could not enlarge upon its powers." *Jones* v. *Civil Service Commission,* 175 Conn. 504, 508, 400 A.2d 721 (1978). This principle guides our construction of chapter 3.

We turn then to the specific charter provisions on which the plaintiffs rely to establish that the civil service commission had the authority to adjudicate their appeals. Their argument is based principally upon § 392, entitled "Discharge or removal; appeals."[5] That section allows commis-

---

[5] "[New Britain city charter] § 392. DISCHARGE OR REMOVAL; APPEALS. No person holding, by final appointment, an office or position classified and graded under the provisions of this chapter shall be removed, discharged, or reduced in rank or pay, except for just cause which shall not be political or religious; nor shall marriage or the greater financial need of others eligible for appointment or promotion be just cause for removal, discharge, or reduction in rank. A person removed, discharged or reduced shall be furnished, by the appointing authority making the removal, with the reasons in writing for such action and a copy of the same shall be immediately forwarded to the civil service commission. Within 5 days after the removal, discharge, or reduction, an appeal in writing may be made to the civil service commission by the employee so removed, discharged, or reduced. The civil service commission, on

sion review of any action whereby a permanent classified employee "shall be removed, discharged, or reduced in rank or pay, except for just cause." This grant of authority, they maintain, is unlimited and embraces discharges in the nature of layoffs as well as disciplinary discharges. In support of this expansive reading, they cite § 302 (2),[6] giving the commission broad authority to "make investigations concerning the enforcement and effect of this

---

receiving such notice of appeal, shall set a date for a hearing of the reasons for the removal, discharge, or reduction, which date shall not be more than 30 days after the date of the removal, discharge, or reduction. Notice of the time and place of such hearing shall be sent to the employee appealing by registered mail at least 10 days before the date set for such hearing. Like notice shall also be given the appointing authority making the removal. The civil service commission or any committee appointed by it shall conduct the hearing or investigation. The employee appealing shall have full opportunity to appear at such hearing, to be represented by counsel and to present witnesses in his behalf. In the course of a hearing or investigation as herein provided for, any member of the commission and of any committee appointed by it shall have the power to administer oaths and to secure by its subpoena both the attendance and testimony of witnesses and the production of books and papers relevant to such hearing or investigation as provided. All evidence may, on the order of the board, be taken by a competent reporter. The decisions and findings of the commission or of the investigating committee, when approved by the commission, shall be final unless appealed by the employee to the court of common pleas as hereinafter provided, and shall be filed, in writing, with the civil service commission and shall be forthwith certified to and enforced by the head of the department or appointing authority. . . ."

[6] "[New Britain city charter] § 302. MEETINGS; POWERS AND DUTIES. The members of the civil service commission shall hold meetings as may be required for the proper discharge of their duties. Said commission shall . . . (2) make investigations concerning the enforcement and effect of this chapter and require observance of its provisions and the rules and regulations made hereunder . . . ."

chapter" and § 374,[7] requiring commission approval of discharges and layoffs of probationary employees.

The defendants counter this interpretation of the city charter both with general principles and with specific rebuttals derived from other provisions of the New Britain charter. They note first that layoffs are presumptively to be distinguished from disciplinary discharges because layoffs arising out of fiscal constraints are generally recognized to be a prerogative of management and hence to fall within managerial discretion in the absence of express charter provisions to the contrary.[8] In support of this presumption, they point to labor arbitration decisions,[9] to the charter's separate section on layoffs, § 391,[10] and to the language of the

[7] "[New Britain city charter] § 374. VACANCIES; PROBATIONARY APPOINTMENTS. When a position in the classified service to which promotional appointments cannot be made shall become vacant, the appointing authority, if it shall desire to fill the vacancy, shall make requisition upon the civil service commission for the name and address of persons eligible therefor and willing to accept appointments thereto. The commission shall certify the three highest ranking names from the appropriate employment list to fill such requisition. In the event that three names are not on appropriate reemployment or employment lists, the commission shall certify all names on such lists. The appointing authority shall forthwith appoint one of those whose names have been so certified to each such vacant position on probation. No person so appointed shall be discharged, laid off, suspended, given leave of absence from duty, transferred, or reduced in pay or grade, except for reasons which will promote the good of the service, filed in writing with the commission and only with its consent and approval. . . ."

[8] See Getman, Labor Relations (1978), pp. 184–86.

[9] National Biscuit Co., 55 L.A. 312, 324 (Blair, 1970); Combustion Engineering Inc., 46 L.A. 289, 291 (Murphy, 1966).

[10] "[New Britain city charter] § 391. LAYOFF. Employees in the classified service who have been performing their duties in a satisfactory manner as shown by the records of the department or other agency in which they have been employed and who shall be laid off because of lack of work or lack of funds, shall be laid off in

section on discharges, § 392, which expressly links discharge with "just cause," a choice of words more indicative of fault and discipline than of financial stringency.

The defendants maintain that the charter provisions amply respond to the plaintiffs' claim that they have a due process right to be heard before they are discharged for any cause whatever.[11] We agree for two reasons. First, as the defendants note, all the plaintiffs except John Argazzi have a right to a hearing in accordance with the grievance provisions of their collective bargaining agreements. Such a grievance procedure will resolve any possible conflict between collective bargaining and the charter.[12] Second, even if collective bargaining procedures were deemed to be insufficient, or, as to the plaintiff Argazzi, were unavailable, we can discern no constitutional basis for a hearing when termination is grounded on financial needs of the employer rather than fault of the employee. *Bishop* v. *Wood,* 426 U.S. 341, 349-50, 96 S. Ct. 2074, 48 L. Ed. 2d 684

the reverse order of their departmental seniority. When funds or work are available, such laidoff employees shall be rehired in the order of their classification seniority and shall be notified at their last address, on file in the personnel office, of their rehiring. Any such employee shall forfeit his classified position if he does not report for work within 15 days after notification in writing to return. The period of service of any employee in the armed forces of the United States during time of war or national emergency or in any expedition of the armed forces shall be included in determining the seniority rating of such employee, provided such employee went directly from the employ of the city into such service, received an honorable discharge therefrom and returned to the employ of the city of New Britain within 60 days from the date of such honorable discharge."

[11] See U.S. Const., amend. XIV § 1; Conn. Const., art. I § 10.

[12] See General Statutes § 7-474 (f).

(1976); *Board of Regents* v. *Roth,* 408 U.S. 564, 573–74, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

Moreover, the defendants argue that the provisions of the New Britain charter rebut the claims made by the plaintiffs. The defendants rely, as did the trial court, on limiting language in § 302 (3),[13] which empowers the commission to hear appeals only from disciplinary actions suspending, reducing or removing classified employees. The defendants also read § 392 as applicable exclusively to disciplinary removals and § 391 as determinative of layoff procedures. They distinguish § 374 because it is limited by its terms to probationary appointments.

The argument that "discharge" in § 392 is all-encompassing is rebutted by the structure and language of the charter. Separate provision for layoffs is made in § 391, which prescribes only the order of termination and reinstatement in the event of layoff. There is further support for the view that the charter deliberately distinguishes layoffs from dismissals in § 374, which refers disjunctively to discharges and layoffs of probationary employees. Finally, § 302 (3), which empowers the commission to hear appeals from disciplinary actions suspending classified employees, limits that right of appeal to claims involving classification or allot-

---

[13] "[New Britain city charter] § 302. MEETINGS; POWERS AND DUTIES. The members of the civil service commission shall hold meetings as may be required for the proper discharge of their duties. Said commission shall . . . (3) hear appeals from any action pertaining to classification and allocation of positions and from any disciplinary action suspending, reducing or removing any officer or employee in the classified service as hereinafter provided, and report, in writing, to the officer taking the action appealed from, its findings, and decisions therein."

ment of positions and disciplinary dismissals. The preceding section, § 302 (2), authorizes only investigations by the commission, and investigatory power cannot be read as identical to adjudicatory power where the charter clearly presents them as separate commission functions. See Davis, Administrative Law (2d Ed. 1978) §§ 18.1, 18.5.

The plaintiffs' reliance on *Cammisa* v. *Board of Education*, 175 Conn. 445, 399 A.2d 521 (1978), for the proposition that a layoff for lack of funds is a dismissal for cause within the bounds of § 392 is misplaced.[14] It is true that in *Cammisa* this court concluded that dismissal for cause as used in the Waterbury charter applied to the elimination of authorized teaching positions for financial reasons. Id., 451. The court concluded, however, that this broad reading was necessary to implement the clear intent of the Waterbury charter that Waterbury teachers be dismissed only for cause. The disputed sections of the Waterbury charter did not speak of economic layoffs and thus permitted no distinction between economic and disciplinary causes of dismissal. The New Britain charter, in contrast, clearly separates economic and disciplinary occasions for dismissal in §§ 391 and 392. The intent of Waterbury may not be imposed on New Britain, and each city's charter will be interpretated independently according to its own language and design. *Local #1186, AFSCME* v. *Board of Education*, 182 Conn. 93, 101, 438 A.2d 12 (1980).

---

[14] The plaintiffs also suggest that *Cammisa* could be read as authorizing the commission to hold a hearing even in the absence of a suitable charter provision. The footnote in *Cammisa* cited for this proposition, however, clearly states that the issue was not properly before the court. *Cammisa* v. *Board of Education*, 175 Conn. 445, 450 n.4, 399 A.2d 521 (1978).

The court in *Cammisa* found it unreasonable to read the Waterbury charter as furnishing greater protection to teachers terminated for fault than to those terminated for budgetary reasons. *Cammisa* v. *Board of Education* supra, 451. Similarly, the New Britain charter, under § 374, furnishes a civil service review to laid off probationary employees but not to laid off permanent employees like the plaintiffs. This apparent anomaly can be explained, however, by a greater need to protect probationary employees, presumably those most recently hired, from the use of layoff as a convenient screen for unjustified dismissals for cause. The drafters of the New Britain charter might reasonably have concluded that the vulnerable position of probationary employees required such additional protection from arbitrary termination.

When §§ 391 and 392 of the New Britain charter are read together, it is apparent that the charter draws a sharp, explicit distinction between layoffs and dismissals for cause in the case of non-probationary employees. These two sections compose Article 9 of the charter, entitled "Termination of Service." Together they divide up the field, offering specific and appropriate protections for employees who lose their positions in either manner. Section 391 mandates that employees laid off for lack of work or lack of funds be rehired according to their classification seniority when work or funds are available. In contrast § 392 mandates that employees removed, discharged or reduced in rank receive the reasons for such action in writing and the right to an appeal. In case of layoff, employees are protected against arbitrary or inequitable rehirings when circumstances change; in case of dismis-

sal for cause, employees are protected against arbitrary or inequitable loss of employment.

Section 391, in contradistinction to § 392, provides no implementing procedures. Such an omission, in a charter that elsewhere provides and articulates review procedures in detail, supports the inference that the drafters intended to provide no right of review in case of layoffs.

Both provisions, §§ 391 and 392, are nonetheless in harmony with the statutory purpose of the merit system, "to provide means for selecting and promoting each public official and employee upon the sole basis of his proven ability to perform the duties of his office or employment more efficiently than any other candidate therefor . . . ." General Statutes § 7-409. The basic distinction between layoff for lack of funds and dismissal for cause has been recognized elsewhere by this court. *State ex rel. Hartnett* v. *Zeller,* 135 Conn. 438, 441–42, 65 A.2d 475 (1949). That distinction is clearly intended as well by the New Britain charter, which authorizes appeal to the civil service commission under § 392 only in the case of dismissal for cause.

## II

In his separate brief, in addition to joining the arguments of the other appellants, the plaintiff John Argazzi questions whether the defendant mayor had any authority to lay off a city employee when the civil service commission, acting in its dual capacities as the plaintiff's appointing authority and as the overseer of New Britain's merit system, failed to concur. At the time of the layoff, John Argazzi was employed as a personnel officer of the civil service commission. He argues, in gen-

eral, that the New Britain charter confers no authority upon the mayor to lay off any city employee and, in particular, that only an appointing authority as defined in § 453 of the charter has the power of removal.[15] Since John Argazzi's employer, the commission, expressly voted not to lay him off, he argues that he was in fact never laid off. Furthermore, he claims his layoff was ineffective since the mayor failed to obtain the commission's consent and approval as required by § 374.

John Argazzi's argument based on § 374 has already been addressed in the previous section of this opinion. That section deals with the rights of probationary employees. Since John Argazzi was not a probationary employee at the time of layoff, § 374 does not apply to him. His second argument, the mayor's alleged lack of authority to lay off city employees, must be resolved by reference to the fundamental principles of municipal government. These principles define municipal authority and locate executive authority, except as otherwise allocated, in a city's executive officer, here its mayor.

As a creature of the state, a city "can exercise only such powers as are expressly granted to it, or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation." *Board of Police Commissioners* v. *White,* 171 Conn. 553, 559, 370 A.2d 1070 (1976); *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 497, 362 A.2d 785 (1975);

---

[15] "[New Britain city charter] § 453. DEFINITIONS. The following terms, as used in this chapter, shall mean as follows . . . 'Appointing authority' shall mean the officer, commission, board, or other body having the power of appointment to offices or positions in any municipal department, office, board, or institution."

*Windham Community Memorial Hospital* v. *Willimantic,* 166 Conn. 113, 122, 348 A.2d 651 (1974); *New Haven Water Co.* v. *New Haven,* 152 Conn. 563, 566, 210 A.2d 449 (1965). In the absence of an express provision, the authority necessary for effective exercise of a granted municipal power will be conferred by implication. *Hartford* v. *American Arbitration Assn.,* 174 Conn. 472, 479, 391 A.2d 137 (1978). Cities with charters have the power to manage, regulate and control their finances; to protect the welfare of the city; and to make all lawful regulations and orders in furtherance of any granted powers. General Statutes §§ 7-194 (6), (26), (57). The New Britain city charter gives to the city all municipal powers "which may be reasonably necessary for the government and regulation of its inhabitants and its local affairs and for the performance of public services, not inconsistent with law or this charter." Section 103. The mayor of New Britain is its chief executive magistrate; New Britain city charter § 2341; and is charged with the responsibility of carrying into effect many attributes of his city's sovereignty. *Prudential Mortgage & Investment Co.* v. *New Britain,* 123 Conn. 390, 394, 195 A. 609 (1937).

The authority of New Britain to lay off city employees for reasons of economy falls within its expressed and implied powers. When the city determines that its welfare and the proper management of its financial resources require reduced expenditures, it has discretion to husband those resources by laying off city employees whose performance it judges expendable. A city may dismiss employees in such circumstances even in the face of civil service regulations, charter provisions or statutes requiring just cause for dismissals. See *Connecti-*

*cut State Employees Assn.* v. *Board of Trustees,*
165 Conn. 757, 763–64, 345 A.2d 36 (1974); *State
ex rel. Hartnett* v. *Zeller,* supra, 441–42; McQuillin,
Municipal Corporations (3d Ed. 1979) § 12.246;
111 A.L.R. 432. In the absence of any charter pro-
vision limiting the mayor's authority to lay off city
employees, that authority will be implied as neces-
sary to the execution of his public duties as New
Britain's chief executive officer. See *Hartford* v.
*American Arbitration Assn.,* supra, 480; *Rowland*
v. *Hayes,* 124 Conn. 129, 137–38, 198 A. 337 (1938).

Section 391 clearly anticipates the possibility of
layoffs for lack of work or lack of funds. To accept
the plaintiff's argument that only an employee's
direct appointing authority can order his layoff is
to fragment municipal power and severely hamper
its exercise in times of economic distress. We have
previously recognized that this very charter, in its
provisions for classified employees of school boards,
entrusts to different municipal agencies the power
of appointment and the power of removal. *Local
# 1186, AFSCME* v. *Board of Education,* supra,
102–103. It is therefore clear that, regardless of
where a city's charter locates appointment powers,
the charter may expressly delegate the authority to
lay off employees to any designated government
agencies or officials, or may refer the issue to griev-
ance procedures under a collective bargaining
agreement. Where the charter has not done so, a
city's mayor, as its chief executive officer, has the
authority to order layoffs of city employees for the
purpose of implementing a properly promulgated
municipal budget that mandates fiscal stringency.

## III

In its decision the trial court, after holding that the civil service commission lacked jurisdiction to hear the plaintiffs' appeals and that the layoffs were lawfully executed, went on to resolve what it termed the plaintiffs' other claims of law; the plaintiffs have appealed from those sections of the decision as well. Since, however, the plaintiffs' complaints raised no issue beyond the defendants' authority to execute these layoffs and requested no relief beyond mandamus, there is no need for this court to reach any additional issues. *Home Owners' Loan Corporation* v. *Nasiatko,* 129 Conn. 19, 23, 25 A.2d 661 (1942). Any error in those rulings would be harmless. Maltbie, Conn. App. Proc. § 24. The trial court's denial of mandamus was correct.

There is no error.

In this opinion the other judges concurred.