ALFRED P. CASSELLA, JR. *v.* CIVIL SERVICE COMMISSION OF THE CITY OF NEW BRITAIN (12803)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued November 14, 1986—decision released January 6, 1987

*Edward J. Daly, Jr.,* with whom, on the brief, was *Bill Kowalski,* law student intern, for the appellant (plaintiff).

*Joseph E. Skelly, Jr.,* for the appellee (defendant).

SANTANIELLO, J. The plaintiff appeals from the judgment of the Appellate Court affirming the Superior Court's decision dismissing the plaintiff's appeal from the action of the defendant, the civil service commission of the city of New Britain. The commission had sustained the decision of the New Britain board of fire

commissioners to reduce the plaintiff in rank in the fire department from lieutenant to private. We affirm the judgment of the Appellate Court.

The operative facts are not in dispute. The plaintiff, Alfred P. Cassella, Jr., commenced employment with the New Britain fire department in 1970. On November 18, 1975, he took a promotional examination for the post of fire lieutenant, and was promoted to that position in April of the following year. By a letter dated January 26, 1981, the board of fire commissioners notified the plaintiff that it would be conducting a hearing to consider whether the examination had been "fixed" for his benefit, whether the plaintiff had violated various provisions of the city charter and the rules of the civil service commission, and whether disciplinary action should be taken against him.

At the hearing, the board received into evidence, over the objection of the plaintiff, several documents which tended to prove that the promotional examination, in fact, had been "fixed." This evidence indicated that the plaintiff's father, Alfred P. Cassella, Sr., had paid $1000 to New Britain fire chief Raymond Galati to give to Alfred Pettinelli, personnel director of the city at the time Cassella, Jr., took the examination. The payment was made in exchange for Pettinelli's assistance in "fixing" Cassella, Jr.'s examination to secure his promotion to fire lieutenant. No evidence, however, was produced at the hearing to implicate Cassella, Jr., in the "fixing" scheme, and Cassella, Jr., testified that he had had no knowledge of the impropriety. The board found that the plaintiff's examination had been "fixed" by Pettinelli, but concluded that Cassella, Jr., had no knowledge of the irregularities. On the basis of these findings, the board reduced Cassella, Jr., in rank from lieutenant to private, but offered him the opportunity to take a new examination for the post of fire lieutenant.

The plaintiff appealed his demotion to the defendant commission, pursuant to § 392[1] of the charter of the city of New Britain. The commission unanimously sus-

[1] "New Britain Charter § 392. DISCHARGE OR REMOVAL; APPEALS

"No person holding, by final appointment, an office or position classified and graded under the provisions of this act shall be removed, discharged or reduced in rank or pay, except for just cause which shall not be political or religious nor shall marriage or the greater financial need of others eligible for appointment or promotion be just cause for removal, discharge or reduction in rank. A person removed, discharged or reduced shall be furnished, by the appointing authority making the removal, with the reasons in writing for such action and a copy of the same shall be immediately forwarded to the civil service commission. Within five days after the removal, discharge or reduction, an appeal in writing may be made to the civil service commission by the employee so removed, discharged or reduced. The civil service commission, on receiving such notice of appeal, shall set a date for a hearing of the reasons for the removal, discharge or reduction, which date shall not be more than thirty days after the date of the removal, discharge or reduction. Notice of the time and place of such hearing shall be sent by registered mail at least ten days before the date set for such hearing to the employee appealing. Like notice shall also be given the appointing authority making the removal. The civil service commission or any committee appointed by it shall conduct the hearing or investigation. The employee appealing shall have full opportunity to appear at such hearing, be represented by counsel and present witnesses in his behalf. In the course of a hearing or investigation as herein provided for, any member of the commission or of any committee appointed by it shall have the power to administer oaths and to secure by its subpoena both the attendance and testimony of witnesses and the production of books and papers relevant to such hearing or investigation as provided. All evidence may, on the order of the board, be taken by a competent reporter. The decisions and findings of the commission or of the investigating committee, when approved by the commission, shall be final unless appealed by the employee to the court of common pleas as hereinafter provided, and shall be filed, in writing, with the civil service commission and shall be forthwith certified to and enforced by the head of the department or appointing authority. Nothing in this act shall limit the power of an appointing authority to suspend a subordinate for a reasonable period not exceeding five days for violating departmental rules. Such appeal to the court of common pleas shall be in writing, shall set forth clearly and concisely the reasons of appeal, shall be served upon the commission in the manner prescribed by law for the service of civil process within ten days after the approval of the decision and findings by the commission, and shall be returnable to the court of common pleas for Hartford county at the return day for said court next following the service of the appeal. (S.L. 1947, No. 199, § 19; S.L. 1967, No. 438)"

tained the board's decision,[2] and the plaintiff appealed to the Superior Court.[3] The court found that the board's use of hearsay evidence did not violate due process, and that the evidence adduced at the hearing supported the board's determination to demote the plaintiff. The court also found that the notice sent to Cassella, Jr., adequately apprised him of what the board would consider at the hearing. The court then dismissed the appeal.

From this determination, the plaintiff appealed to the Appellate Court, claiming that the Superior Court erred (1) in concluding that he was afforded due process at the hearing before the board of fire commissioners, and (2) in concluding that the commission's finding that he violated the city charter and personnel rules was supported by the evidence and not in excess of its authority. The Appellate Court held that the plaintiff was afforded a fair and impartial hearing and was not deprived of due process of law by the written hearsay evidence admitted by the board. *Cassella* v. *Civil Service Commission*, 4 Conn. App. 359, 372, 374, 494 A.2d 909 (1985). The Appellate Court also concluded that the

---

[2] The Appellate Court noted that the defendant commission made no findings of fact and, in effect, affirmed the board's findings and procedures.

[3] The plaintiff brought the appeal pursuant to § 392 of the city charter and General Statutes § 51-197b which provides: "ADMINISTRATIVE APPEALS. (a) Except as provided in section 31-301b, all appeals which may be taken from administrative decisions of officers, boards, commissions or agencies of the state or any political subdivision thereof shall be taken to the superior court. The superior court, after a hearing, may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from. So much of any special act as is inconsistent with this section is repealed.

"(b) Except as provided in sections 8-8, 8-9, 8-28 and 8-30, there shall be a right to further review to the appellate court under such rules as the judges of the appellate court shall adopt.

"(c) The procedure on such appeal to the appellate court shall be in accordance with the procedure provided by rule or law for the appeal of judgments rendered by the superior court unless modified by rule of the judges of the appellate court. There shall be no right to further review except to the supreme court pursuant to the provisions of section 51-197f."

plaintiff had received adequate notice of the charges against him to enable him to prepare his defense, and that the plaintiff was properly demoted for just cause. Id., 374.

Upon a grant of certification, the plaintiff appealed, and now claims that the Appellate Court erred: (1) in finding that the board could properly rely solely on hearsay evidence to demote him from a rank in which he has served satisfactorily; (2) in failing to find that due process demands that a person with a property interest in his position has a right to confront and cross-examine adverse witnesses before being demoted; and (3) in finding that there was just cause to demote him when the board made a specific finding that he had no knowledge that his examination had been fixed. We disagree.

In addressing the first two issues raised by the plaintiff we need not look any further than the Appellate Court's well reasoned determination. We find that the court's analysis disposes of the plaintiff's claims, and we expressly adopt its opinion as to these issues. While we also agree with the court's holding as to the third issue, we feel that the lack of precedents in this state upon such an important issue warrants further discussion of the issue by this court.

Before the merits of the plaintiff's third claim are addressed, it is important to state what is not at issue in this case. Neither the plaintiff nor the defendant claims that the position of fire lieutenant was an unclassified civil service position, nor is there any claim that the plaintiff held a noncompetitive position. See New Britain Charter §§ 351, 352, 371, 372. There is also no claim that the plaintiff was provisionally appointed to the position of fire lieutenant. See id., § 375. Moreover, there is no challenge to the original examination itself. See id., § 372. Finally, neither the plaintiff nor the

defendant claims that the plaintiff was demoted because of lack of work or funds. See id., § 391; cf. *Parretta* v. *New Britain,* 185 Conn. 88, 440 A.2d 823 (1981).

Promotion in the New Britain fire department is governed by the charter of the city of New Britain, which states, in part, that "[t]he personnel director shall hold promotion tests whenever there shall be an opening in a superior class to be filled and no appropriate promotional list exists. The examination shall be open to those in inferior grade, the duties of which directly tend to fit the incumbents thereof for the performance of the duties of the superior grade." New Britain Charter § 372 (1980). Rule VII of the rules of the civil service commission[4] requires that "[a]ll . . . promotions to competitive positions in the classified service *shall* be made according to merit and fitness to be ascertained by a competitive examination . . . efficiency and seniority." (Emphasis added.)

We have long recognized the purpose and importance of such examinations. In *Ziomek* v. *Bartimole,* 156 Conn. 604, 610, 244 A.2d 380 (1968), we stated that "[t]he object of providing for civil service examinations is to secure more efficient employees, promote better government, eliminate as far as practicable the element of partisanship and personal favoritism, protect the employees and the public from the spoils system and secure the appointment to public positions of those whose merit and fitness have been determined by proper examination." See *State ex rel. Chernesky* v. *Civil Service Commission,* 141 Conn. 465, 469, 106 A.2d 713 (1954).

The civil service law provides for promotion in governmental employment according to merit and fitness

---

[4] The rules and regulations of the civil service commission have the force and effect of law. New Britain Charter § 302 (1); see *Gilbert* v. *Civil Service Commission,* 158 Conn. 578, 582, 265 A.2d 67 (1969).

ascertained by competitive examination. *Resnick* v. *Civil Service Commission,* 156 Conn. 28, 30, 238 A.2d 391 (1968); *State ex rel. McNamara* v. *Civil Service Commission,* 128 Conn. 585, 588, 24 A.2d 846 (1942). The primary purpose of these laws is to guarantee that the meritorious secure jobs and to free public employees from the fear of personal and political reprisal. *Resnick* v. *Civil Service Commission,* supra, 31. These examinations not only protect the employees but also benefit the general public in that they tend to eradicate corruption as well as ensure that the persons with the necessary qualifications to discharge intelligently their duties pertaining to public office will do so. Id.

It cannot be overemphasized that proper competitive examinations are the cornerstone upon which an effective civil service system is built. Any violation of the law enacted for preserving this system, therefore, " 'is fatal because it weakens the system of competitive selection which is the basis of civil service legislation.' " *Ziomek* v. *Bartimole,* supra, quoting *Civil Service Board* v. *Warren,* 74 Ariz. 88, 91, 244 P.2d 1157 (1952). Strict compliance is necessarily required to uphold the sanctity of the merit system; *Jones* v. *Civil Service Commission,* 175 Conn. 504, 510, 400 A.2d 721 (1978); *Walker* v. *Jankura,* 162 Conn. 482, 490, 294 A.2d 536 (1972); good faith of the parties will not validate illegal appointments, nor will continued employment in an invalidly obtained position. Cf. *Resnick* v. *Civil Service Commission,* supra, 32; *McAdams* v. *Barbieri,* 143 Conn. 405, 420, 123 A.2d 182 (1956); *Howe* v. *Civil Service Commission,* 128 Conn. 35, 38, 20 A.2d 397 (1941). To excuse "good faith" violations of our civil service law " 'would open the door to abuses which the law was designed to suppress.' " *Resnick* v. *Civil Service Commission,* supra, 33, quoting *State ex rel. Kos* v. *Adamson,* 226 Minn. 177, 182–83, 32 N.W.2d 281 (1948).

In the instant case, the board found that Pettinelli had "fixed" the plaintiff's examination at the instigation of Cassella, Sr.; Cassella, Jr., thus received a promotion, not based on a competitive examination to determine his merit and fitness, but as the result of an illegally altered examination. Because Cassella, Jr.'s promotion was not made according to merit and fitness as ascertained by a competitive examination, his promotion is invalid. See *Ziomek* v. *Bartimole,* supra, 611; *Resnick* v. *Civil Service Commission,* supra.

Nevertheless, the plaintiff continues to argue that the board cannot demote him because there was no finding of misconduct on his part. Pursuant to § 392 of the city charter, the board of fire commissioners, subject to § 301 et seq. of the charter, may remove, suspend or otherwise penalize the officers, members and employees of the fire department. Section 392 provides in part that "[n]o person holding, by final appointment, an office or position classified and graded under the provisions of this act shall be removed, discharged or reduced in rank or pay *except for just cause* which shall not be political or religious; nor shall marriage or the greater financial need of others eligible for appointment or promotion be just cause for removal, discharge or reduction in rank." (Emphasis added.) An examination of both the city charter and the rules of the civil service commission fails to reveal what is meant by "just cause." Nowhere, however, does it state that just cause requires the board make a showing of personal misconduct to reduce a person in rank.[5]

---

[5] In contradistinction, rule XIII of the rules of the civil service commission states in part:

"RULE XIII DISCIPLINE

"1. An appointing authority shall discharge or suspend without pay pending investigation, any employee in the classified service for any of the following causes:

"(1) Prohibited political activity as defined in Section 16 of the Merit Act.

"(2) Disloyalty to the United States or membership in any organization declared to be subversive by the United States Department of Justice.

We have stated previously that "just cause" implies a reasonable ground for removal as distinguished from a frivolous or incompetent ground. *Molino* v. *Board of Public Safety,* 154 Conn. 368, 374–75, 225 A.2d 805 (1966); *Riley* v. *Board of Police Commissioners,* 147 Conn. 113, 118, 157 A.2d 590 (1960); *McNiff* v. *Waterbury,* 82 Conn. 43, 46, 72 A. 572 (1909). We have also stated that while the sufficiency of cause is for the board to decide, the question of whether the cause assigned constitutes grounds for removal, as a matter of law, is a question for the judiciary. *Molino* v. *Board of Public Safety,* supra, 375; *Riley* v. *Board of Police Commissioners,* supra; *McNiff* v. *Waterbury,* supra.

"(3) Conviction of a crime involving moral turpitude.

"(4) Conduct towards superiors, subordinates, co-workers, prisoners, inmates or the public unbecoming an officer or employee of the City of New Britain.

"(5) Two successive efficiency ratings below 60 on a scale of 100 provided the appointing authority has notified the employee in writing immediately following his first rating of less than 60.

"(6) Intoxication or unseemly conduct on duty or elsewhere so as to reflect discredit upon the city.

"(7) Wilful neglect or misuse of any city property, equipment, materials or supplies.

"(8) Fraud or collusion in connection with any examination or appointment in the classified service.

"(9) Deliberate violation of any law or rule pertaining to or affecting employment in the city service.

"(10) Commission of a criminal or immoral act.

"In addition to the foregoing, an appointing authority may suspend an employee without pay for a period not to exceed thirty (30) days for any justifiable cause including the following:

"(1) Absence without leave for 5 or more working days.

"(2) Failure to return to duty within 5 days following authorised leave.

"(3) Reporting for duty under the influence of liquor.

"(4) Neglect of duty.

"(5) Violation of departmental rules.

"Re-Instatement. Any employee who after investigation or appeal is found not guilty of the offense for which he has been discharged or suspended shall be re-instated with back pay to the date of discharge or suspension and all notations of discharge or suspension shall be removed from the employee's roster or other employment records."

Because Cassella, Jr., was reduced in rank, as opposed to being dismissed or suspended, rule XIII is inapplicable.

In the present case, the plaintiff's failure to be promoted in accordance with the requirements of the charter of the city of New Britain and the rules of the civil service commission does constitute just cause for reduction in rank. Finding just cause in such a situation is consistent with both the charter and the commission's rules as well as the underlying tenets of the civil service system itself.[6] To hold otherwise would undercut the cornerstone upon which the system rests. The Appellate Court was correct in concluding that the dishonest examination procedure, despite a personal absolution of wrongdoing, was just cause to reduce Cassella, Jr., in rank.

We affirm the judgment of the Appellate Court.

In this opinion the other justices concurred.

---

[6] As we stated in *Perretta* v. *Civil Service Commission,* 185 Conn. 88, 100, 440 A.2d 823 (1981), § 392 of the New Britain charter is in "harmony with the statutory purpose of the merit system, 'to provide means for selecting and promoting each public official and employee upon the sole basis of his proven ability to perform the duties of his office or employment more efficiently than any other candidate therefore . . . .' General Statutes § 7-409." Cf. New Britain Charter § 301 (members of civil service commission shall be in sympathy with the merit principle as applied to the civil service).