[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff David Bierce appeals the decision of the commissioner of the department of mental retardation holding that he is not eligible for the department's services. The commissioner's decision was based on General Statutes § 1-1g. The plaintiff's appeal is authorized by § 4-183.
The following facts are undisputed. The plaintiff is a twenty-one year old New Milford resident who has been diagnosed with Tourette's syndrome and attention deficit disorder. The plaintiff applied for the services of the department in 1991 and was determined to be ineligible under the department's eligibility criteria. Thereafter, in 1991 and 1992, in response to renewed applications, the department made further determinations that the plaintiff was ineligible for services. The basis of the department's position was that the plaintiff's intelligence evaluations revealed him to be in the category of borderline intelligence rather than in the category of mentally retarded.
The plaintiff requested a hearing pursuant to General Statutes § 17a-210 (d) to appeal the department's decision. On January 21, 1993 a hearing was held before a department hearing officer. By decision dated February 2, 1993, the hearing officer denied the plaintiff's appeal, finding that the plaintiff did not meet the eligibility criteria. The basis of the decision was the hearing officer's findings that the plaintiff's intelligence test scores showed a full scale IQ of 75 1985, above the limit for a determination of mental CT Page 5805 retardation; and that the plaintiff did not display significant deficits in adaptive behavior. The commissioner issued a decision dated February 5, 1993, affirming the hearing officer's decision that the plaintiff was ineligible for services.
The plaintiff requested reconsideration of the decision, based on the submission of additional information, including reports of the results of two intelligence tests administered prior to the plaintiff's eighteenth birthday. The hearing officer considered the additional evidence presented by the plaintiff and by letter dated June 1, 1993, notified the plaintiff that the department continued to find him ineligible for services.
In her decision of February 2, 1993, the department's deputy commissioner, who as officer, held that the plaintiff was not eligible for services because "to be eligible for DMR services, the person must
 * have formal I.Q. test scores below 70 before the age of 18. The testing in 1985 disclosed a full scale I.Q. of 75.
 * have deficits in adaptive behavior. David does not display significant deficits in adaptive behavior as shown by his ability to live on his own with appropriate supports."
In her June 1993, decision, the hearing officer held that "eligibility for DMR services rests on meeting three criteria: (1) residence in Connecticut; (2) serious deficits in adaptive skills as shown by I.Q. scores of 69 or lower; (3) onset during the developmental period (before age 18)."
The plaintiff raises three issues as the bases of his appeal: (1) that the hearing officer misstated the provisions of General Statutes § 1-1g in applying that statute to the facts of the plaintiff's case; (2) that the decision is not supported by substantial evidence in the record; and (3) that the decision violates the plaintiff's right to equal protection of the law under CT Page 5806 the Connecticut constitution.
General Statutes § 1-1g(a) defines "mental retardation" as "a significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period." Section 1-1g(b) provides:
 As used in subsection (a), "general intellectual functioning" means the results obtained by assessment with one or more of the individually administered general intelligence tests developed for that purpose and standardized on a significantly adequate population and administered by a person or persons formally trained in test administration; "significantly subaverage" means an intelligence quotient more than two standard deviations below the mean for the test; "adaptive behavior" means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected for the individual's age and cultural and "developmental period" means the group; period of time between birth and the eighteenth birthday.
In the tests administered to the plaintiff, a score of 100 points on the full scale IQ test is average. A standard deviation is fifteen points. Since 1-1g
defines "significantly subaverage" as an IQ more than two standard deviations below the mean for the test, a score of 69 or below on the IQ test meets the "significantly subaverage" requirement. With respect to his "developmental period," the plaintiff attained age 18 in June 1990.
The plaintiff's first argument on appeal is based on the statutory definition of "mental retardation" in General Statutes § 1-1g. That definition requires a finding of significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior. Therefore, to meet the criteria for a finding of mental retardation, the plaintiff must CT Page 5807 function at the significantly subaverage level and have adaptive behavior deficits. The plaintiff claims that the hearing officer misstated the criteria for a finding of mental retardation in holding that the plaintiff "does not display significant deficits in adaptive behavior. . . ." He points out that the statute does not require a finding of "significance."
The plaintiff misreads the hearing officer's decision. The officer first correctly states that one criterion is that the person "have deficits in adaptive behavior." In the next sentence, she states her finding in the plaintiff's case that he does not exhibit significant deficits. In context, this clearly means that the plaintiff does not have such deficits as would constitute those contemplated by the statute. The court does not read the hearing officer's decision as increasing the degree of deficit that is necessary meet the statutory definition.
The court also notes, in this connection, that the record contains abundant evidence concerning the plaintiff's adaptive behavior, including the testimony of his cousin, who served as his homemaker under a program administered by the department of human resources. The hearing officer had substantial evidence, therefore, on which to base a finding that the plaintiff did not have a deficit in adaptive behavior within the meaning of 1-1g. A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (f) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion."Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57 — 58 (1991). Similarly, regard to questions of fact, it is (not) the function of the trial court. . . to retry the case or to substitute judgement for that of the administrative agency." Id. "If the administrative record provides substantial evidence upon which the hearing officer could reasonably CT Page 5808 have based his finding. . .the decision must be upheld."Conn. Building Wrecking Co. v. Carrothers, 218 Conn. 580,601 (1991). These familiar principles require the court to affirm the hearing officer's decision on the issue of the plaintiff's adaptive behavior.
The plaintiff's principal contention with respect to the sufficiency of the evidence relates to the various I.Q. tests that the hearing officer considered in reaching her decision concerning the plaintiff's "general intellectual functioning." He claims that the hearing officer erroneously relied upon test scores from 1985, which were not part of the record, and test scores from 1991 and 1992, when the plaintiff was over 18 years of
The court has reviewed the entire record and concludes that the hearing officer properly considered the test scores from 1985. While the full report of the 1985 test scores is not in the record, these test scores are referred to in the "Programmatic Administrative Review" of the regional director submitted at the hearing, and the report of Katherine Neuhaus, who administered the 1988/98 tests, attached to the review report. The 1985 test scores were also noted at the hearing by the hearing officer without objection by the plaintiff's advocate.
General Statutes § 4-178 provides that "(a)ny oral or documentary evidence may be received" at the administrative hearing of a contested case, and our courts have held that this includes even hearsay evidence so long as it is reliable and probative. Cassella v.Civil Service Commission, 4 Conn. App. 359, 362 (1985); aff'd 202 Conn. 28, 33 (1987). Although there are exceptions to this rule, the plaintiff has not advanced any reasons for excluding the documents that are in the record and which report the 1985 I.Q. test results. Furthermore, "[w]hen hearsay statements have come into a case without objection they may be relied upon by the trier, in proof of the matters stated therein, for whatever they were worth on their face." (Citations and internal quotation marks omitted.) Volck v. Muzio,204 Conn. 507, 518 (1987).
The plaintiff's full scale IQ test scores from 1979, CT Page 5809 1982, 1988 and 1989 were in the mentally retarded range. The plaintiff's full scale IQ test score in 1985 was 75, which is in the borderline range. In 1991, when the plaintiff was eighteen years ten months, he achieved a score of 72 which is in the borderline range. He achieved the same score in 1992, when he was nineteen. At the hearing, the plaintiff's advocate referred to the range in test scores, stating "if you see other testing scores there is discrepancies. He does score significantly higher on some other tests in terms of he goes to like to low to mid 70's."
Again, it is not the court's function to retry the case or to substitute its judgment for that of the administrative agency as to the weight of the evidence. There is considerable evidence in the record concerning the plaintiff's test scores. The score in 1985 clearly supports the hearing officer's finding that the plaintiff did not meet the relevant criterion. Furthermore, the hearing officer was entitled to weigh the evidence of the test scores in 1991 and 1992 in determining the plaintiff's intellectual functioning in 1990 and prior thereto. And the hearing officer was entitled to give lesser weight to the evidence of test scores in other years. Based on the evidence in the record, the court cannot conclude that the hearing officer's findings concerning the plaintiff's intellectual functioning were arbitrary or unreasonable.
The plaintiff's final contention is that the department's decision denying him its services violates his right to equal protection under the Connecticut constitution.
Article first, § 20, as amended by article twenty-one
of the amendments to the Connecticut constitution, provides in relevant part that "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of. . .physical or mental disability." "[C]lassifications based on disabilities are subject to strict judicial scrutiny under the Connecticut constitution." Foti v.Richardson, 30 Conn. App. 463, 469 (1993). CT Page 5810
In the present case, the department found the plaintiff to be ineligible for services because his condition does not come within the definition of mentally retarded. Here, as in Foti v. Richardson, "the commissioner has not predicated disparate treatment on the plaintiff's [mental disability]." Id. "[i]t is the absence of mental retardation that underlies his ineligibility for department services." Id. Therefore, the commissioner's denial of services to the plaintiff, who was determined not to be mentally retarded, does not violate the plaintiff's right to equal protection.
The plaintiff's appeal is dismissed.
MALONEY, J.