[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Jeremy J. Joyell appeals the decision of the defendant state board of education revoking his secondary school teaching certificate. The board acted pursuant to General Statutes § 10-145b(m) and Regs. Conn. State Agencies § 10-145d-612 upon its determination that the plaintiff is professionally unfit to perform the duties .for which the certificate was issued. The plaintiff appeals pursuant to General Statutes § 4-183. The court finds the issues in favor of the defendants.
The facts essential to the court's decision are not in dispute. The plaintiff had been an English teacher at Bristol Eastern High School from 1965 until January 1988. At that time, he applied for retirement. Immediately prior to his retirement, in December 1987, the plaintiff was the subject of a complaint by a female student alleging inappropriate behavior of a sexual nature.
About two years after the plaintiff's retirement from the Bristol school system, in January 1990, the superintendent of schools in Bristol learned that the plaintiff was seeking a teaching position in another public school system. The superintendent thereupon wrote to the defendant commissioner of education requesting revocation of the plaintiff's certificate. The superintendent's request was made pursuant to Regs. Conn. State Agencies § 145d-612(b). In the request, the superintendent described the sexual misconduct complaint of December 1987 and reported that he had received several letters from other former students of the plaintiff accusing him of improper sexual conduct over the course of his teaching career at the Bristol school.
Pursuant to the regulations, the commissioner initiated an investigation of the allegations against the plaintiff. Following the investigation, which consumed a little over three years, the defendant commissioner determined, in accordance with § 10-145d-612(f) of the regulations, that there was probable cause to institute proceedings to revoke the plaintiff's teaching certificate. CT Page 4069-VV Accordingly, the commissioner served on the plaintiff an administrative complaint setting forth the grounds for revocation. The original complaint was dated April 8, 1993. It was subsequently amended twice.
In the complaint, the commissioner alleges that the plaintiff engaged in sexual relations with three female students, attempted to do so with a fourth female student, and made inappropriate, sexually suggestive comments to four other female students. The complaint alleges that the first incident occurred during the 1967-68 school year and specifies the school years during which each of the subsequent incidents allegedly occurred. It alleges that the last incident occurred during the 1987-88 school year. The complaint does not name any of the students but simply refers to them as "female Student A" etc.
The plaintiff requested a hearing, the commissioner designated a hearing officer, and the parties participated in pre-hearing conferences and discovery proceedings. During these preliminary proceedings, in August 1993, the commissioner disclosed to the plaintiff the names of the former students who brought the accusations against him and who would be testifying at the hearing.
The hearing commenced on January 10, 1994. It consumed twenty-nine days over a ten month period, ending on November 8, 1994. Thirty-eight witnesses testified. They included the plaintiff, the eight women who had accused him of misconduct, expert witnesses called by the plaintiff and the commissioner, other teachers and administrators at Bristol Eastern High School, and others. In March 1995, the parties submitted post-hearing briefs to the hearing officer.
On May 9, 1995, the hearing officer rendered her proposed decision. In her decision, the hearing officer stated that the required standard of proof is clear and convincing evidence. She stated that she applied that standard in making the following findings of fact:
 (1) that the plaintiff engaged in sexual activity with "Female Student A," a nineteen year old Bristol Eastern High School on two occasions during the 1967-68 school CT Page 4069-WW year;
 (2) that the plaintiff engaged in sexual activity with "Female Student B," a seventeen year old Bristol Eastern High School student on seven occasions during the 1971-72 and 1972-73 school years;
 (3) that the plaintiff engaged in sexual activity with an unidentified woman in his classroom in November 1977;
 (4) that the plaintiff acted in a sexually inappropriate manner with a seventeen year old Bristol Eastern High School student (L) during the 1970-71 school year, making her feel uncomfortable;
 (5) that the plaintiff made inappropriate sexually suggestive comments to a seventeen year old Bristol Eastern High School student (S) during the 1981-82 school year, making her feel uncomfortable;
 (6) that the plaintiff made inappropriate sexually suggestive comments to a sixteen year old Bristol Eastern High School student (F) during the 1980-81 and 1981-82 school years, making her feel uncomfortable;
 (7) that the plaintiff made inappropriate sexually suggestive comments to a seventeen year old Bristol Eastern High School student (LA), acted in a sexually suggestive manner with her, and attempted to meet her outside of the school after school hours in December 1987;
 (8) that the plaintiff made inappropriate sexually suggestive comments to a seventeen year old Bristol Eastern High School student (PP) during the 1987-88 school year.
The hearing officer summarized her factual findings, stating:
 The substantial, probative and reliable evidence entered into the record establishes, by clear and convincing evidence, that Joyell maintained sexual relationships with teenage girls who were students at Bristol Eastern. Joyell cultivated these relationships while he was their teacher. The cultivation of these sexual relationships CT Page 4069-XX directly affects the trust that is central to a healthy teacher-student relationship.
Based on the findings of fact, the hearing officer made the conclusions of law that the plaintiff is "unfit" to perform the duties of a teacher and that his conduct constituted "other due and sufficient cause" for revoking his license, as provided by General Statutes § 10-145b(m)(3) and (5).
The plaintiff filed written exceptions to the proposed decision, accompanied by a lengthy and exhaustive memorandum setting forth his arguments on the law and the evidence.
The defendant board met on June 22, 1995 to consider and vote on the proposed decision. In accordance with Regs. Conn. State Agencies § 10-145d-612(i), each board member signed a statement that he or she had read the proposed decision. The plaintiff appeared at the board meeting, represented by counsel. The plaintiff's attorney presented oral argument opposing adoption of the hearing officer's proposed decision. Plaintiff's attorney also responded to questions from the board members.
Following presentation of oral argument and the question and answer session, the board members deliberated. They then voted, five to four, to adopt the proposed decision as their final decision and to revoke the plaintiff s certificate. It is that final decision which is the subject of this appeal.
In his brief, the plaintiff advances essentially five arguments in support of his appeal: (1) that the board violated constitutional and statutory provisions in rendering its final decision; (2) that the commissioner violated the plaintiff's due process rights in conducting its investigation; (3) that the commissioner withheld certain evidence from the plaintiff that would have been exculpatory; (4) that applicable statutes of limitation barred the board's proceedings; and (5) that the evidence in the record does not support the hearing officer's findings of fact.
1. The Vote of the Board
CT Page 4069-YY
The plaintiff contends that the deliberations of the board were flawed by its failure to comply with the provisions of General Statutes § 4-179. In particular, he argues that the members should have been required to certify that they had read his exceptions and brief in opposition to the proposed decision prior to voting. He also points to the statement of one of the members, during the course of their deliberations, to the effect that she was confused by the multiplicity of charges and the testimony of the complaining witnesses.
General Statutes § 4-179(a) (Rev. to 1990) provides as follows:
 When, in an agency proceeding, a majority of the members of the agency who are to render the final decision have not heard the matter or read the record, the decision, if adverse to a party, shall not be rendered until a proposed final decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the members of the agency who are to render the final decision.
"The UAPA procedures generally requiring a public hearing in contested cases, and § 4-179 in particular, are patently sufficient to safeguard basic due process rights." Pet v. Department of Health Services, 228 Conn. 651,673 (1994). Due process requirements are satisfied if board members are sufficiently familiar with the record and the issues to make an "informed judgment in compliance with § 4-179." Id., 682.
Undisputed facts in the record of this case establish that the defendants, the commissioner and the board, complied with the minimum requirements of § 4-179. The hearing officer, who heard the entire case, rendered a proposed decision and furnished it to the plaintiff prior to its adoption by the full board as its final decision. The plaintiff was afforded full opportunity to present and did present exceptions, a written brief and oral argument to the board members.
The court has reviewed the transcript of the meeting CT Page 4069-ZZ of the board at which the members heard the oral arguments, questioned the attorneys, deliberated among themselves, and eventually voted on the adoption of the proposed decision. At the beginning of that meeting, the chairman of the board noted that each board member had been furnished with copies of the proposed final decision, the administrative complaint, the parties' post-hearing briefs, the plaintiff's exceptions to the proposed decision, and the parties' briefs concerning the proposed decision. In addition, the chairman noted that the transcript of the hearing and the exhibits were available to the board members prior to the meeting. During the meeting, as indicated previously, the board members heard the parties' oral arguments and their answers to the board members' questions.
The facts summarized above and, in particular, the comments of the board members during the meeting, show that the board members were familiar with the issues and the evidence and that they carefully considered them in the course of voting to adopt the hearing officer's proposed decision. The momentary confusion expressed by board member Greenberg is of little or no significance. Immediately thereafter, indeed, this board member forcefully presented her reasons, based on evidence in the record, for upholding the hearing officer's findings.
The court concludes, therefore, that the procedure followed by the board did not violate the plaintiff's rights under General Statutes § 4-179 or any other statutory or regulatory provisions. His due process claims in this regard may not be sustained.
2. Improper Investigation
The investigator assigned to the case did not reveal the names of the female students to the plaintiff during the investigation. The plaintiff claims that he was, therefore, unable to respond effectively when he was interviewed by the investigator. As a result, he argues, the investigation and the determination of probable cause were not "objective." The plaintiff's contentions with respect to the conduct of the investigation in his case may have some merit. They do not, however, afford a basis for sustaining the plaintiff's appeal of the board's CT Page 4069-AAA final decision.
The plaintiff points to no statute or regulation to support his contention that the manner in which the investigation was conducted deprived him of due process. Furthermore, General Statutes § 4-183(j) provides, in relevant part that "the court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."
In the present case, the commissioner's investigation was only a distant prelude to the decision of the agency, which is the actual subject of this appeal. Subsequent to the investigation but prior to the administrative hearing, the commissioner disclosed to the plaintiff the names of his accusers. After that, there was a full evidentiary hearing at which the plaintiff's accusers testified and were subjected to rigorous cross-examination. Therefore, even if the commissioner's investigation were conducted in such a way as to permit or encourage false accusations, as the plaintiff suggests, the plaintiff was given full and effective opportunity to confront the witnesses against him and combat their accusations before the board rendered its final decision. Most importantly, the proposed decision and the board's final decision are clearly based entirely on the evidence adduced at the administrative hearing, not on what may have transpired during the preliminary investigation.
The court concludes that the manner in which the commissioner investigated the case prior to the hearing does not provide a basis for reversing the ultimate decision of the board.
3. Withheld Evidence
In his brief on appeal, the plaintiff contends that he was denied due process of law because the defendants "withheld from Mr. Joyell more than 77 documents relating to the investigation and pursuance of this case." These CT Page 4069-BBB documents were notes, mostly handwritten, of the commissioner's investigator, Patricia Scully. Most of the notes were made after April 8, 1993, the date the commissioner issued the determination of probable cause. The hearing officer reviewed the notes in camera and ruled, at the request of the commissioner, that they not be disclosed to the plaintiff. The hearing officer articulated several reasons for withholding the notes from disclosure: that some of the notes revealed the names of people interviewed who had requested confidentiality, that some of the notes reflected only the investigator's thought processes ("deliberations"), and that some of the notes (post April 1993) were made in preparation for prosecution of the charges and thus privileged as attorney work product. The hearing officer also stated that the notes did not contain any exculpatory information, defined as information favorable to the plaintiff.
In his brief, the plaintiff asserts as the sole basis of his due process argument that the documents in question "may contain some exculpatory information or evidence as to the propriety of the investigation and finding of probable cause . . . The failure to produce these documents constitutes unlawful procedure."
The documents in question were preserved under seal and delivered to the court after oral argument on the appeal. The court has examined them. They do not contain any information exculpatory of the plaintiff. The author of the notes, Patricia Scully, testified at length at the administrative hearing, having been called by the plaintiff. The notes also do not contain any statements that are inconsistent with her testimony so as to cast doubt on her credibility.
A ruling by a hearing officer during an administrative hearing may be the basis for reversing the agency's final decision only if "substantial rights of the person appealing have been prejudiced" as a result. General Statutes § 4-183(j). Jutkowitz v. Department of HealthServices, 220 Conn. 86, 94 (1991). The court finds that the plaintiff has suffered no such prejudice as a result of the hearing officer's rulings with respect to the documents in question in this case. CT Page 4069-CCC
4. Statutes of Limitation
The plaintiff argues that the hearing officer and defendant board committed error in refusing to apply a rule barring prosecution of the charges against the plaintiff on the basis that the alleged conduct occurred beyond the period permitted under statutes of limitation. The defendants point out and the plaintiff concedes that no such statute specifically applies to the proceedings in this case. The plaintiff argues that the defendants should have nevertheless constructed a rule, using statutes applicable to other categories of legal actions, so as to prevent the commissioner from using allegations of prior misconduct as the basis of this license revocation proceeding.
Statutes of limitation and the doctrine of laches do not ordinarily bar an agency of the state government from bringing a civil action. Aronson v. Foohey,42 Conn. Sup. 348 (1992). The plaintiff argues, however, that nothing prohibits an agency from imposing such a rule and that it was unreasonable not to do so in this case. The plaintiff argues that he has a property right in his license to teach that is as important as any of the rights protected in criminal and civil actions to which statutes of limitation do apply. He argues, further, that a distinction should be made between prior acts of bad conduct that were previously proved to have occurred and, on the other hand, acts alleged to have occurred in the past that are only now sought to be proved. He argues that evidence of acts in the latter category, such as alleged in this case, should be subject to a time limitation because the memories of witnesses and other evidence are less reliable with the passage of time.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through4-189), and the scope of that review is very restricted. . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the CT Page 4069-DDD [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotations marks omitted.) Board of Education v. Freedomof Information Commission, 208 Conn. 442, 452 (1988). Furthermore, even "judicial review of conclusions of law reached administratively is . . . limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn.Light Power Co. v. Dept. of Public Utility Control,219 Conn. 51, 57 — 58 (1991).
These basic principles afford an administrative agency considerable latitude in cases where no statute, regulation or prior court decision mandates a particular course of action. Moreover, if the time limitation issue in this case may be regarded as an evidentiary issue, the court notes that the law is particularly generous to administrative agencies in that regard. General Statutes § 4-178 provides that "(a)ny oral or documentary evidence may be received" at the administrative hearing of a contested case, and our courts have held that this includes even hearsay evidence so long as it is reliable and probative. Cassella v. Civil Service Commission,4 Conn. App. 359, 362 (1985); aff'd 202 Conn. 28, 33
(1987).
In the present case, the board's task under General Statutes § 10-145(m)(3) was to determine whether the plaintiff "is professionally unfit to perform the duties (of a secondary school teacher)." In the context of the applicable statute, therefore, evidence of past misconduct would be relevant and material if it revealed a predilection for such behavior as would lead a reasonable person to conclude that the actor is presently unfit for licensure. As the comments of some of the board members at its meeting make clear, the board considered the evidence of past misconduct in this case as showing a continuing "pattern" of unacceptable behavior. As one member put it, "The notion the state would be powerless because of passage of time to protect a student in the future is a notion that is simply unacceptable and I would have to reject (it)." (Transcript of meeting of board June 22, 1995, p. 74, Administrative Record). CT Page 4069-EEE
Based on the lack of any applicable statute of limitation and the other considerations set forth above, the court concludes that it was not unreasonable for the hearing officer to admit and for the board to consider evidence and testimony of past misconduct of the plaintiff notwithstanding that such misconduct occurred beyond the time limited by statutes of limitation that would pertain in other kinds of legal actions. This conclusion is strengthened by the fact that counsel for the plaintiff had full opportunity to cross-examine each adverse witness regarding her memory of events occurring in the past and did so vigorously. The plaintiff thus presented the issue of credibility and failed memory at the factfinding stage of the proceeding, forcing the hearing officer to deal with it as a central issue in the case.
5. Burden of Proof and Sufficiency of Evidence
The plaintiff's claims concerning the burden of proof and the sufficiency of evidence essentially challenge the factfinding function as performed by the hearing officer. As noted, the hearing officer stated in her proposed decision that she imposed on the defendant commissioner the burden of proving the charges against the plaintiff by clear and convincing evidence. The plaintiff claims that the commissioner failed to meet that burden.
General Statutes § 4-183(j) provides that "(t)he court shall not substitute its judgment for that of the agency as-to the weight of the evidence on questions of fact. . . ." Rather, the court is governed by the rule of substantial evidence. Briefly stated, the rule is that "If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld."Conn. Building Wrecking Co. v. Carothers, 218 Conn. 580,601 (1991). "In challenging an administrative agency action, the plaintiff has the burden of proof. . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo, . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the CT Page 4069-FFF agency's decision. In reviewing an . . . agency decision made pursuant to the (Uniform Administrative Procedure Act), the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency . . . (the rule of substantial evidence) imposes an important limitation on the power of the courts to overturn a decision of an administrative agency. . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Citations omitted; internal quotation marks omitted.) Newtown v. Keeney, 234 Conn. 312, 319-320
(1995), quoting Samperi v. Inlands Wetlands Agency,226 Conn. 579, 587-588 (1993).
Application of the foregoing rules to the circumstances of this case requires the court to reject the plaintiff's contentions. The court has reviewed the entire record in this case, including particularly the transcript of the administrative hearing. The hearing officer's findings of fact are supported by the clear and unequivocal testimony of many witnesses. Of course, there was conflicting testimony, including most importantly that of the plaintiff himself. There was also testimony and other evidence that, if believed, would cast doubt on the credibility of the accusers. But under our Administrative Procedure Act, it was the hearing officer's task to sort out all the evidence, give such weight as she deemed appropriate to the testimony of the various witnesses and other evidence, resolve issues of credibility, and ultimately to determine whom to believe and whom not to believe. Pursuant to the provisions of the Act, it was then the board's task to adopt or reject the hearing officer's findings and conclusions. The court may not disturb that process so long as the record contains substantial evidence that supports the hearing officer's findings and so long as the board followed the requirements of the Act. In this case, the testimony of the witnesses constituted the required evidence, and, as noted, the board scrupulously followed the procedures CT Page 4069-GGG prescribed by General Statutes § 4-179 and the other provisions of the Act.
For all of the reasons set forth above, the hearing officer's findings and the board's decision must be affirmed. The appeal is dismissed.
MALONEY, J.