[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In 1994, the plaintiff, Leo Bombalicki, then a sergeant in the New Haven Police Department, was passed over for promotion to lieutenant. He commenced this somewhat eventful litigation to contest the legality of his nonpromotion. This opinion marks the final chapter of this saga in the Superior Court.
Some of the pertiment history has been recounted in a previous opinion. Bombalicki v. Pastore, 27 Conn. L. Rptr. 183 (2000) (BombalickiI). As Bombalicki I explains, Bombalicki's original complaint consisted of three counts. The first count alleges that the asserted failure to promote violated the New Haven Charter. The second count alleged that the asserted failure was on account of Bombalicki' s exercise of free speech and thus violated Conn. Gen. Stat. § 31-51q. The third count alleged intentional infliction of emotional distress.
Bombalicki I held that Conn. Gen. Stat. § 31-51q is inapplicable to the failure to promote alleged in the second count of the original complaint and entered judgment for the defendants on that count. On December 20, 2000, following that decision, Bombalicki filed an amended complaint consisting of two counts. The first count of the amended complaint alleges violation of the New Haven Charter. The second count of that complaint alleges intentional infliction of emotional distress.
By agreement of the parties, the first count of the amended complaint was tried to the court and the second count was simultaneously tried to the jury. The evidentiary hearing occurred on January 3-4, 2001. At the close of the plaintiff's case-in-chief, the court granted the defendants' motion for a directed verdict on the second count. At the conclusion of all the evidence, the court reserved its decision on the first count. Following posttrial briefing, the first count was argued on February 26, 2001. This opinion addresses only the first count of the amended complaint.
The dispositive facts are not in controversy. Bombalicki originally enrolled in the ranks of the New Haven Police Department in 1978, when he entered the police training academy. He was promoted to the rank of sergeant in 1991. In 1993 he took a civil service examination for promotion to the rank of lieutenant. The results of the examination were posted on April 13, 1994. Bombalicki was given a "rank" of "9" on the list.
The ranking system employed by the City requires some explanation. If multiple candidates attain the same score on an examination, they are given the same "rank." The candidate (or candidates) with the next lowest score are then given the next lowest rank. Suppose, to use a hypothetical CT Page 3085 example, that Smith, Brown, Jones, and White take the examination. Smith scores 100; Brown and Jones each score 99; and White scores 98. In that event, Smith will be given a rank of "1"; Brown and Jones will each be given a rank of "2" and White will be given a rank of "3," in spite of the fact that he is, in fact, the fourth candidate on the list.
Bombalicki's rank of "9" did not mean that he was the ninth candidate on the list. In fact, he was one of three candidates with that rank, each of whom were tied for fourteenth place on the list. Ahead of Bombalicki, three candidates were tied for the rank of "5," three for the rank of "7," and two for the rank of "8." Below him, four candidates were tied for the rank of "10," two for "11," and two for "12." Twenty-five candidates shared the top twelve ranks. (Several other candidates with scores greater than seventy shared ranks lower than "12," but they are not relevant for purposes of this case.)
On September 27, 1994, the New Haven Board of Police Commissioners, acting on the recommendation of then-Chief of Police Nicholas Pastore, promoted nineteen of the top twenty-five candidates. The promotion list included each of the thirteen candidates in ranks "1" through "8." Each of the three candidates in rank "9," including Bombalicki, were passed over. The promotion list then included all four candidates in rank "10," one of the two candidates in rank "11," and one of the three candidates in rank "12."
The evidence shows that one of the candidates in the "9" rank, Harold Baldwin, was added to the promotion list in December 1994, after additional funding was obtained. Bombalicki was promoted to lieutenant in October 2000.
At the time of the promotions in question, the New Haven Charter provided in relevant part that:
 Whenever [the civil service] board shall have adopted rules relative to the appointment or promotion of any class of individuals, no appointments or promotions within such class shall be made except from those applicants with the three highest scores of those who shall have passed an examination with a score of at least seventy percentum and have received a certificate to that effect from said board and are upon the list of those eligible to such position or promotion under the rules of said board, excepting supernumerary police and substitute fire personnel.
New Haven Charter § 160 (1993). CT Page 3086
The substantive issue presented by the first count of the amended complaint is whether the failure to promote Bombalicki in September 1994 violated the Charter provision just quoted. The parties agree that this question turns on the proper construction of the Charter and specifically on the Charter's phrase "those applicants with the three highest scores."
If each applicant has a different score, the Charter provision is unproblematic. Thus, to return to the four applicants in our hypothetical case, if Smith has a score of 100, Brown has a score of 99, Jones has a score of 98, and White has a score of 97, Smith, Brown, and Jones are plainly the "applicants with the three highest scores." The problem arises in the not infrequent case of a tie. Suppose that Smith has a score of 100, Brown and Jones each have a score of 99, and White has a score of 97. In that event, the term "scores" is ambiguous. The phrase "applicants with the three highest scores" can be read as referring to Smith, Brown and Jones, for their scores — one 100 and two 99s — are the three highest individual scores. It can also be read as referring to Smith, Brown, Jones, and White, for the three different numerical scores racked up by these candidates — 100, 99, and 97 — are the three highest scores with different numerical values. Bombalicki advances the first analysis; the City relies on the second.
The City's argument has some linguistic plausibility and is aided by the fact that the Charter language in question replaced previous Charter language restricting appointments to "those applicants, not exceeding three, who shall stand highest on the list." New Haven Charter § 191 (1951). This change in text, the City argues, must have been intended to accomplish some change in practice.
The problem with the City's analysis is that it can lead to results that are absurd by any description. Suppose, to return to our hypothetical example, that Smith is one of one hundred (or one hundred thousand) applicants who score 100 on the examination. Suppose further that Brown and Jones score 71, and White scores 70. Under the City's analysis, all of these applicants are the "applicants with the three highest scores" — the "highest scores" in this case being 100, 71, and 70. The City would thus be able to pass over all one hundred (or one hundred thousand) applicants who score 100 and appoint Brown, Jones, and White. However textually arguable, this is surely a startling result.
Beyond this absurdity, however, the City's analysis leads to results that are actually perverse. Consider the strategic possibilities evolving from the following scenario: CT Page 3087
Smith 100 Brown 99 Jones 98 White 70
Under this scenario, White has no chance of being selected. If the authorized selection is a random one, Smith, Brown, and Jones each have a one in three chance of being selected.
Now suppose that Jones studies hard and improves his score by one point. The roster of eligible candidates will then look like this:
Smith 100 Brown 99 Jones 99 White 70
What is the reward that Jones has earned for his study? Before he improved his grade, he had a one in three chance of being selected. Now, for his pains, he has a one in four chance of being selected, for — under the City's analysis — Smith, Brown, Jones, and White are now all eligible for selection. The situation become even more perverse in the not implausible event that multiple candidates share White's score. If White is one of, say, three candidates scoring 70, all three of those candidates will suddenly become eligible by the fortuity of Jones's improved score, and Jones's chances will decline from one in three before the improvement of his score to one in six afterwards. Even worse, thanks again to Jones's improved score, the appointing authority is now free to pick only from the candidates scoring 70 and utterly ignore all three candidates scoring 100 and 99. This is a preposterous result.
"It cannot be overemphasized that proper competitive examinations are the cornerstone upon which an effective civil service system is built."Cassella v. Civil Service Commission, 202 Conn. 28, 35, 519 A.2d 67
(1987). "The purpose of these laws is to ensure the appointment of personnel possessed of the qualifications which are necessary for a fit and intelligent discharge of duties pertaining to public office. . . ."Resnick v. Civil Service Commission, 156 Conn. 28, 31, 238 A.2d 391
(1968). The ambiguous term "scores" in New Haven Charter § 160 should be read with this purpose in mind. In addition, municipal charters, like all legal enactments, should be read with the presumption that the enacting authority intends sensible results. Cf. Town of Southington v.Commercial Union Insurance Co., 254 Conn. 348, 357, 757 A.2d 549 (2000) (discussing canons of statutory interpretation). Under these circumstances, the court concludes that Bombalicki's construction of the CT Page 3088 Charter provision in question is correct and that the Charter's phrase "applicants with the three highest scores" means the applicants with the three highest individual scores and not the applicants having the three highest scores with different numerical values. If more than three applicants at the top of the list share identical scores, a tiebreaker system may have to be devised, but that is merely a predictable consequence of the "rule of three." The City's argument that Charter § 160 encompasses the three highest scores with different numerical values regardless of the number of applicants gaining those scores is not persuasive.
It is evident, given this analysis, that the September 1994 promotion list violated the Charter provision in question. That promotion list skipped all three candidates sharing the rank of "9" before descending to the rank of "10." The Charter, properly construed, required promotion of at least one of the "9"s prior to a promotion of any of the "10"s. Bombalicki, as mentioned, was one of the "9"s.
Under well established law, however, this must be a pyrrhic victory for Bombalicki. He had no personal right to be promoted. The rule of three "does not mandate the selection of the highest individual on the eligible list." Cassidy v. Municipal Civil Service Commission, 337 N.E.2d 752, 753
(N.Y. 1975). Charter § 160 sets forth no criteria distinguishing between the top three candidates on the eligibility list. The appointing authority has unfettered authority to choose among those candidates, and any individual candidate can be passed over with impunity.
Bombalicki contends that he had a property interest in his prospective promotion. This contention cannot be squared with well established principles of property law. "Although one's actual job as a tenured civil servant is property, see, e.g., Cleveland Bd. of Educ. v. Loudermill,470 U.S. 532, 538-39 . . . (1985), the prospect of a promotion is not in the same category." Nunez v. City of Los Angeles, 147 F.3d 867, 871
(9th Cir. 1998). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth,408 U.S. 564, 577 (1972). No property interest of this description exists here. "Promotion to lieutenant's rank is not a matter of right and is not governed by fixed rules which if complied with automatically entitle the applicant to promotion." Bigby v. City of Chicago, 766 F.2d 1053, 1057
(7th Cir. 1985), cert. denied, 474 U.S. 1056 (1986). See Nunez v. Cityof Los Angeles, supra, 147 F.3d at 872 (collecting authorities).
"[T]he only remedy a Civil Service examinee in the competitive class is entitled to for defects in the appointive or promotional process such as CT Page 3089 that presented here is not appointment or promotion, but a judicial direction for reconsideration after the prior defect has been corrected."Andriola v. Ortiz, 624 N.E.2d 667, 669 (N.Y. 1993), cert. denied,511 U.S. 1031 (1994). Emphasis in original.) As Andriola explains, a retroactive promotion to lieutenant cannot be justified on the ground that it would make Bombalicki "whole." The appropriate remedy for a wrongfully discharged employee is not the appropriate remedy for an employee unfairly considered for promotion. In the case of a wrongfully discharged employee, reinstatement restores to the employee that which he or she possessed before the wrong was committed." Id. In the case of an employee unfairly considered for a promotion, a judicial order of retroactive promotion would award more than the employee was entitled to before the wrong was committed. Id. at 670.
The only judicial remedy that would make Bombalicki whole would be a prospective order that he be fairly considered for promotion to the rank of lieutenant. As mentioned, however, Bombalicki was in fact promoted to the rank of lieutenant in October 2000. Under these circumstances, the court cannot award him any meaningful declaratory or injunctive relief.
For the reasons set forth above, judgment must enter for the defendants on the first count of the amended complaint.
Jon C. Blue Judge of the Superior Court